IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| **Great Lakes Packers, Inc.,** et al., | **Case No.  1:18cv2754 (lead case)** 1:18cv2849 1:18cv2906 |
| **Plaintiffs,** | 1:19cv1673 |
| -vs- | |
| | **JUDGE PAMELA A. BARKER** |
| **P.K. Produce, Inc., et al.,** | |
| **Defendants** | **MEMORANDUM OPINION & ORDER** |

Currently pending is the Plaintiffs' Joint Motion for Entry of an Order Determining Validity and Extent of PACA Trust Claims.  (Doc. No. 83.)  Defendants filed Briefs in Opposition to the Motion (Doc. Nos. 84, 85), to which Plaintiffs replied (Doc. Nos. 87, 88, 89, 90, 91, 92, 93.)

For the following reasons, Plaintiffs' Joint Motion is GRANTED as set forth herein.

## I.      Background

Plaintiffs are in the business of buying and selling wholesale quantities of produce, also known as "perishable agricultural commodities."  Between January and October 2018, Plaintiffs sold wholesale quantities of produce to Defendant P.K. Produce, Inc., which is owned by Defendants Paul and Debra Kasapis.  Plaintiffs allege that P.K. Produce failed to pay them and now seek recovery under various theories, including for violations of the Perishable Agricultural Commodities Act ("PACA"), 7 U.S.C. § 499a, *et seq*.

Specifically, on November 2018, Plaintiffs Great Lakes Packers, Inc. and Keith Connell, Inc. filed a Complaint against Defendants P.K. Produce, Inc., Paul Kasapis, Debra Kasapis, Sipasak Properties, LLC, and The Kasapis Family Irrevocable Intervivos Trust.  (Doc. No. 1.)  Plaintiffs alleged that, between July and October 2018, they sold produce in the total amount of $102, 353.24

to Defendant P.K. Produce, and that P.K. Produce failed to pay.  (*Id.* at ¶¶ 10-12.)  These Plaintiffs'
Complaint alleged breach of contract as well as various claims for violations of the Perishable
Agricultural Commodities Act ("PACA"), 7 U.S.C. § 499a, *et seq.*  (*Id.*)  They also filed Motions for
Preliminary Injunction and for Temporary Restraining Order.  (Doc. Nos. 5, 10.)

In February 2019, upon motion, the instant action was consolidated with two other cases in
this District; i.e., *C.H. Robinson Worldwide, Inc., et al. v. P.K. Produce, Inc., et al.*, Case No.
1:18cv2849 (N.D. Ohio) and *B&D Produce Sales LLC v. P.K. Produce, Inc., et al.*, Case No.
1:18cv2906 (N.D. Ohio).  *See* Doc. No. 19; Non-Document Order dated Feb. 13, 2019.  In these
cases, Plaintiffs C.H. Robinson Worldwide, Inc., Original Produce Distributing, Inc., The Players
Sales, Inc., and B&D Produce Sales LLC alleged that they had each sold produce to P.K. Produce
between January 2018 and October 2018, and that P.K. Produce had failed to pay.  These Plaintiffs
asserted claims against Defendants P.K. Produce, Paul Kasapis, Debra Kasapis, and Sipasak
Properties for breach of contract and PACA violations in the total aggregate amount of $466, 261.87.
*See* Case No. 1:18cv2849 (Doc. No. 5 at ¶ 10); Case No.  1:18cv2906 (Doc. No. 1 at ¶ 10).

On February 14, 2019, then-assigned District Judge Solomon Oliver entered a Preliminary
Consent Injunction, which provided, in relevant part, as follows:

> 14.  PACA establishes a statutory trust under which Defendants are trustees
> required to hold all its perishable agricultural commodities ("Produce"),
> inventories of food or other products derived from Produce, receivables or
> proceeds from the sale of Produce and its products, and all inventories or
> assets purchased or maintained with the funds from a commingled
> account (collectively, the "PACA Trust Assets") in trust for the benefit of  its
> Produce suppliers and sellers, such as Plaintiffs. 7 U.S.C. § 499e(c)(2).

**AGREEMENT**

> 15.  The attorneys for the Parties in all three cases have conferred and reached the
> following agreement to:

2

(a) obtain an injunction to maintain the status quo of the PACA Trust Assets and to prevent any further dissipation of the PACA Trust Assets until the assets of P.K. Produce can be inventoried and sold or otherwise liquidated;

(b) escrow and segregate all sales or liquidation proceeds to be preserved solely for payment of valid PACA trust claims until all potential PACA trust beneficiaries have been able to assert their claims and the Parties can establish a claims procedure to provide a mechanism to identify and validate PACA trust claims; and

(c) provide for priority disbursement of funds to reimburse the valid PACA trust beneficiaries.

***

18.     Defendants consent that creditors with valid PACA trust claims are entitled to a beneficial interest in the single floating pool of Defendants' PACA Trust Assets, and that qualified PACA trust beneficiaries presumptively have first priority interests in and rights to the PACA Trust Assets, including without limitation, furniture, fixtures, equipment, vehicles, leases, real property and leasehold improvements, all of which should be considered or deemed to be included within the definition of PACA Trust Assets.

19.     Defendants reserve all rights to contest the determination of what constitutes PACA Trust Assets and amount, validity and PACA trust status of creditors alleging that they have valid PACA trust claims and that properly join this action, as well as all legal and equitable defenses available with respect to the claims asserted in this case, including the right to seek to be removed from obligations contained in this Order.

(Doc. No. 21.)  Judge Oliver then ordered that "Defendants cannot transfer, sell, or otherwise encumber any of their real or personal assets derived from or related to the PACA trust until further order of this Court, unless all proceeds from the transfer or sale are immediately deposited upon sale

3

or transfer to P.K. Produce's operating account ("the Operating Account") held at Chase Bank."  (*Id.* at ¶ 21) (emphasis added).[1]

Over the course of the next several months, a number of additional Plaintiffs joined the instant action.  In April 2019, Farm Wey Produce, Inc. was granted leave to intervene and filed an Intervenor's Complaint against Defendants P.K. Produce, Paul Kasapis, Debra Kasapis, and Sipasak Properties.  Farm Wey alleged that it had sold produce to P.K. Produce in the total amount of $122,156 between July 2018 and August 2018, and that P.K. Produce had failed to pay.  (Doc. No. 38.)  Like the other plaintiffs, Farm Wey asserted claims for breach of contract and various PACA violations.  (*Id.*)

In August 2019, upon motion, this matter was consolidated with *R&R Produce v. P.K. Produce, Inc.,* Case No. 1:19cv1673 (N.D. Ohio).  In its Complaint, R&R Produce alleged various claims against Defendants P.K. Produce, Paul Kasapis, Debra Kasapis, and Does 1 - 10, and also asserted claims against defense counsel George Argie and the law firm of Argie, D'Amico, and Vitantonio.  *See* Case No. 1:19cv1673 (Doc. No. 1.)  R&R Produce's claims were based on sales of produce in the total amount of $131,983.35 to P.K. Produce between August and October 2018. (*Id.* at ¶ 18.)

Later that month, Plaintiffs C.H. Robinson Worldwide, Original Produce, and The Players Sales were granted leave to file an amended complaint adding two new party plaintiffs, i.e. The Midwest's Best Produce Company and Victory Farm Sales.  (Doc. No. 62.)  These two new plaintiffs

---

[1] This case was subsequently re-assigned to the undersigned in July 2019 pursuant to General Order 2019-13.

asserted claims against Defendants in the amounts of $26, 411 and $29, 201.50, respectively.  (*Id*. at ¶ 12.)

Meanwhile, the Court issued an Order granting Plaintiffs 30 days "to submit appropriate documentation to each other regarding their claims and to submit an agreed-upon entry to the court." (Doc. No. 51.)  In September 2019, the Court directed Plaintiffs to file a motion regarding the parties' PACA trust claims by October 4, 2019, with Objections due by November 4, 2019.  (Doc. No. 77.)

Plaintiffs thereafter filed a Joint Motion for Entry of Order Determining Validity and Extent of PACA Trust Claims.  (Doc. Nos. 83.)  Defendants P.K. Produce, Debra Kasapis, and Sipasak Properties, LLC filed Objections on November 4, 2019.  (Doc. No. 84.)  Defendant Paul Kasapis filed a separate Objection on that same date.  (Doc. No. 85.)  Plaintiffs filed replies in November 2019.[2] (Doc. Nos. 87, 88, 89, 90, 91, 92, 93.)

At the parties' request, this matter was referred to mediation before Magistrate Judge William Baughman.  (Doc. No. 77.)  Counsel specifically asked this Court not to rule on Plaintiffs' pending Joint Motion, stating that a ruling on the motion would have a "tremendous impact" on the parties' ability to resolve the matter at mediation.  (Doc. No. 162.)  Although the mediation was originally scheduled to occur in January 2020, it was postponed several times and did not take place until July 16, 2020.  (Doc. No. 78, 102, 180.)  The matter did not settle.   Magistrate Judge Baughman termed the referral for mediation on July 24, 2020.

---

[2] In March 2020, the various groups of Plaintiffs each filed Amended Complaints adding new party defendants 3DLogistics, LLC; Magnum Express Trucking, Inc.; and Strike Zone Lanes, LLC.  (Doc. Nos. 97, 104, 105, 106, 108.) Moreover, in April 2020, Defendants P.K. Produce, Debra Kasapis, and Magnum Express Trucking filed a Third-Party Complaint against Jeffrey Heestand, asserting claims for conversion and civil theft.   (Doc. No. 154.)  In addition, Defendants P.K. Produce, Debra Kasapis, and Sipasak Properties filed a Motion to Permit Debra Kasapis to Liquidate and/or Encumber the Assets of Defendant Sipasak Properties, Inc., which Plaintiffs opposed. (Doc. Nos. 120, 125.)  On June 12, 2010, the Court issued a Memorandum Opinion & Order granting Defendants' Motion.  (Doc. No. 176.)

Thus, Plaintiffs' Joint Motion for Entry of Order Determining Validity and Extent of PACA Trust Claims became ripe for adjudication on July 24, 2020.

## II.    Statutory Framework

As the Sixth Circuit has explained, "PACA provides a comprehensive regulatory scheme for the sale of produce in interstate commerce." *Six L's Packing Co., Inc. v. Beale*, 524 Fed. Appx. 148, 152 (6th Cir. April 8, 2013). "'Under the Act, when a seller, dealer, or supplier ships produce to a buyer, a statutory trust is created upon acceptance of the commodities.'" *Id.* (quoting *Golman–Hayden Co. v. Fresh Source Produce, Inc.*, 217 F.3d 348, 350 (5th Cir. 2000)). *See also* 7 U.S.C. §§ 499a–499t. Specifically, the statute provides for the formation of a trust as follows:

> Perishable agricultural commodities received by a commission merchant, dealer, or broker in all transactions, and all inventories of food or other products derived from perishable agricultural commodities, and any receivables or proceeds from the sale of such commodities or products, shall be held by such commission merchant, dealer, or broker in trust for the benefit of all unpaid suppliers or sellers of such commodities or agents involved in the transaction, until full payment of the sums owing in connection with such transactions has been received by such unpaid suppliers, sellers, or agents.

7 U.S.C. § 499e(c)(2).

The trust created by the above statute protects sellers of perishable agricultural commodities against financing arrangements made by merchants who encumber commodities or the proceeds thereof, thus giving sellers precedence over the claims of secured creditors. *See e.g., Overton Distrib. v. Heritage Bank*, 340 F.3d 361, 365 (6th Cir. 2003); *J.A. Besteman Co. v. Carter's Inc.*, 439 F.Supp.2d 774, 777 (W.D. Mich. 2006). The legislative history to the 1984 amendments to this statute explains the need to protect produce suppliers, as follows:

> Sellers of agricultural commodities are often located thousands of miles from their customers. Sales transactions must be made quickly or they are not made at all.... Under such conditions, it is often difficult to make credit checks, conditional sales agreements, and take other traditional safeguards.

....

> Many [buyers], in the ordinary course of their business transactions, operate on bank loans secured by [their] inventories, proceeds or assigned receivables from sales of perishable agricultural commodities, giving the lender a secured position in the case of insolvency. Under present law, sellers of fresh fruits and vegetables are unsecured creditors and receive little protection in any suit for recovery of damages where a buyer failed to make payment as required by the contract.

H. R. Rep. No. 98–543, 98th Cong., 1st Sess. 3 (1983).  *See also Sanzone-Palmisano Co. v. M. Seaman Enterprises, Inc.*, 986 F.2d 1010, 1012 (6th Cir. 1993).

Thus, PACA sought to protect produce sellers by creating "'a trust obligation ..., prior to and superior to any lien or security interest in inventory held by the [buyer's] secured lender.'" *Sanzone-Palmisano Co.*, 986 F.2d at 1012 (quoting *In re Prange Foods, Corp.*, 63 B.R. 211, 214 (Bankr.W.D.Mich.1986)).  Moreover, the Sixth Circuit has explained that the PACA trust created by § 499e(c)(2) is a "floating" trust, in that it applies to all of the buyer's produce and inventory and all proceeds from the sale of produce.  *Sanzone-Palmisano*, 986 F.2d at 1012.  The trust beneficiary is therefore not obligated to trace assets.  *Id.* (stating that "the trust beneficiary is not obligated to distinguish the assets to which its trust applies from other produce-related assets.")  *See also J.A. Besteman Co.*, 439 F.Supp.2d at 777; *Shippers Service Co., Inc. v. Fresh Louie's Produce Co., LLC*, 2010 WL 726242 at * 2 (E.D. Mich. Feb. 24, 2010).

"In return for its protections, PACA establishes strict eligibility requirements." *Patterson Frozen Foods v. Crown Foods International*, 307 F.3d 666, 669 (7th Cir. 2002).  First, in order to be eligible for PACA protection, a seller must be selling its produce on a short-term credit basis.  *See* 7 C.F.R. § 46.46(e)(2); *see also Patterson*, 307 F.3d at 669; *Epic Fresh Produce, LLC v. Olympic Wholesale Produce, Inc.*, 2017 WL 6059971 at * 4 (N.D. Ill. Dec. 7, 2017); *Heeren, LLC v. Cherry Growers, Inc.*, 2015 WL 9450851 at * 3 (W.D. Mich. Dec. 23, 2015).  As discussed in more detail

7

*infra*, under the applicable regulations, the default period of time for making payment under the PACA is within 10 days of the buyer's acceptance of the produce. 7 C.F.R. § 46.2(aa)(5). Parties may agree to payment terms other than that default 10-day period, but the maximum time for payment to which a seller can agree without losing eligibility for trust benefits is 30 days after receipt and acceptance of the produce. *See* 7 C.F.R. § 46.46(e)(2); *Epic Fresh Produce*, 2017 WL 6059971 at * 4. Any agreement to different payment terms must be reduced to writing, and it must be entered into prior to the transaction.[3] *See* 7 C.F.R. § 46.46(e)(1); *see also Patterson*, 307 F.3d at 669; *Sutherland Produce Sales, Inc. v. High Country Distrib. LLC,* 2017 WL 782281 at *9 (D. Utah Feb. 28, 2017).

Second, in order to be eligible for PACA protection, a seller must file a written notice of intent to preserve trust benefits. 7 U.S.C. § 499e(c)(3); 7 C.F.R. § 46.46(f). *See also Heeren, LLC*, 2015 WL 9450851 at * 3. There are two methods of achieving this notice. The unpaid seller can give written notice of intent to preserve the benefits of the trust in the manner outlined in 7 U.S.C. § 499e(c)(3).[4] In addition, PACA licensees may follow the "invoice method" notice procedure outlined in U.S.C. § 499e(c)(4). Under this subsection, a licensee may preserve its PACA Trust benefits through its "ordinary and usual billing or invoice statements" if those statements include (1) the time

---

[3] A seller that has preserved its trust benefits may also enter into a post-default payment schedule with the defaulting buyer, or accept a partial payment from the defaulting buyer, without forfeiting its eligibility under the PACA Trust. *See* 7 C.F.R. § 46.46(e)(3); *see also Spada Properties, Inc. v. Unified Grocers, Inc.*, 38 F. Supp. 3d 1223, 1231 (D. Or. 2014).

[4] Section 499e(c)(3) provides as follows: "The unpaid supplier, seller, or agent shall lose the benefits of such trust unless such person has given written notice of intent to preserve the benefits of the trust to the commission merchant, dealer, or broker within thirty calendar days (i) after expiration of the time prescribed by which payment must be made, as set forth in regulations issued by the Secretary, (ii) after expiration of such other time by which payment must be made, as the parties have expressly agreed to in writing before entering into the transaction, or (iii) after the time the supplier, seller, or agent has received notice that the payment instrument promptly presented for payment has been dishonored. The written notice to the commission merchant, dealer, or broker shall set forth information in sufficient detail to identify the transaction subject to the trust. When the parties expressly agree to a payment time period different from that established by the Secretary, a copy of any such agreement shall be filed in the records of each party to the transaction and the terms of payment shall be disclosed on invoices, accountings, and other documents relating to the transaction."

period for payment if the parties expressly agree to a different period from that established by the Secretary of Agriculture; and (2) the following text: "The perishable agricultural commodities listed on this invoice are sold subject to the statutory trust authorized by section 5(c) of the Perishable Agricultural Commodities Act, 1930 (7 U.S.C. 499e(c)).  The seller of these commodities retains a trust claim over these commodities, all inventories of food or other products derived from these commodities, and any receivables or proceeds from the sale of these commodities until full payment is received." 7 U.S.C. § 499e(c)(3), (4); *see also Epic Fresh Produce, LLC*, 2017 WL 6059971 at * 4.

## III.    Analysis

In their Joint Motion, Plaintiffs ask the Court to enter an Order confirming that their PACA trust claims are valid as to principal and interest.  (Doc. No. 83.)  Attached to the Motion is a proposed Order which sets forth the specific amount of principal and interest claimed by each of the ten Plaintiffs in this action.[5]  (Doc. No. 83-1.)

Defendants P.K. Produce, Inc., Debra Kasapis and Sipasak Properties, LLC (hereinafter referred to the as "P.K. Produce Defendants") filed an Objection on November 4, 2019.  (Doc. No. 84.)  Therein, the P.K. Produce Defendants argue (summarily and without citation to any legal authority or supporting evidence) that Plaintiffs' claims are invalid for the following reasons:  (1) "failure to submit a valid PACA license;" (2) "failure to provide any inspection reports or documentation relating to any adjustments made to invoices or indicate no such documents exist;" and (3) "failure to include signed written agreements stating different payments terms than required

---

[5] Plaintiffs subsequently submitted an updated chart that contained principal and interest accrued through September 30, 2020.  (Doc. No. 185-2.)

by PACA." (*Id*.)  In addition, with regard to Plaintiffs Keith Connell, Inc., Farm Wey Produce, and B&D Produce, the P.K. Produce Defendants argue that these Plaintiffs failed to credit P.K. Produce for certain payments.  (*Id*.)  Finally, Defendants argue that B&D Produce failed to produce any supporting invoices within its submitted PACA Trust Claim packet.  (*Id*. at p. 3.)

Defendant Paul Kasapis filed a separate Objection, in which he objected to the claims of Plaintiffs C.H. Robinson, Original Produce, The Midwest's Best Produce Company, Victory Farm, and Farm Wey.  (Doc. No. 85.)  Therein, Defendant Kasapis argues that these Plaintiffs' claims should be held invalid because Plaintiffs' invoices included a payment term greater than the 10 day period set forth in 7 C.F.R. 46.2(aa)(11) and Plaintiffs failed to produce a written agreement as required by statute.  (*Id*.)

Plaintiffs C.H. Robinson, Original Produce, the Player's Sales, The Midwest's Best Produce Company, and Victory Farm (hereinafter referred to as the "C.H. Robinson Plaintiff Group") filed replies to both Objections on November 13, 2019.  (Doc. Nos. 87, 89.)  Plaintiff Farm Wey Produce filed replies shortly thereafter.  (Doc. Nos. 90, 91.)  Plaintiffs Great Lakes Packers, Inc. and Keith Connell, Inc. filed a joint reply on November 18, 2019.  (Doc. No. 92.)  Finally, Plaintiffs R&R Produce, Inc. and B&D Produce Sales, LLC filed separate replies on November 13 and 18, 2019, respectively.  (Doc. Nos. 88, 93.)

Neither the P.K. Produce Defendants or Defendant Kasapis sought leave to file a Sur-Reply.

The Court will address each of Defendants' Objections in turn, below.

**A.     "Failure to submit a valid PACA license"**

10

The P.K. Produce Defendants argue that each of the ten Plaintiffs' PACA claims should be held invalid for "failure to submit a valid PACA license."  (Doc. No. 84.)  No further explanation or legal authority in support of this Objection is provided. [6]

In response, each of the ten Plaintiffs attach copies of their respective PACA licenses to their Reply Briefs.  (Doc. Nos. 87-1, 88-1 at PageID# 834, 91-1, 92-1, 93-1.)  Plaintiffs also note that PACA licenses are publicly available from the United States Department of Agriculture's website at https://usdaams.service-now.com/public.  (Doc. Nos. 87, 88, 91, 92, 93.)  Finally, Plaintiffs Great Lakes Packers, Inc. and Keith Connell, Inc. state that they produced copies of their PACA licenses to Defendants both at the commencement of the case and in discovery in September 2019.  (Doc. No. 92 at p. 2.)

For the following reasons, the Court rejects the P.K. Produce Defendants' argument that Plaintiffs' PACA claims should be held invalid because they failed to submit valid PACA licenses. As noted above, Plaintiffs have each attached copies of their PACA licenses to their Reply Briefs. Defendants do not dispute that Plaintiffs' PACA licenses are valid.  Nor do they dispute that Plaintiffs' PACA licenses are publicly available documents that are available online.  Further, Defendants cite no authority that Plaintiffs are required to attach copies of their PACA licenses to their Joint Motion in order for their claims to be held valid.

Accordingly, the P.K. Produce Defendants' argument is without merit and rejected.

**B.      Failure to credit specific payments by P.K. Produce**

---

[6] Indeed, the P.K. Produce Defendants' Objection is not even written in complete sentences.  Rather, Defendants' Objection is composed of a series of bullet points, with no further discussion or citation to legal authority in support of any of the specific arguments raised therein.

11

The P.K. Produce Defendants next argue that Plaintiffs Keith Connell, Inc., Farm Wey Produce, and B&D Produce failed to credit P.K. Produce for certain payments.  (Doc. No. 84.) Specifically, Defendants assert that (1) Plaintiff Keith Connell, Inc. failed to provide credit for a payment of $2,991.00 for invoice V13232C; (2) Plaintiff Farm Wey failed to provide credit for a payment of $1,480.00 for invoice 91886; and (3) Plaintiff B&D Produce failed to provide credit for a payment of $13,435.00 for invoice 18-1058.  (*Id.*)  In support, Defendants attach copies to their Objection of cancelled checks reflecting these payments.  (Doc. Nos. 84-1 through 84-3.)

The Court will address the P.K. Produce Defendants' arguments as to each of these Plaintiffs separately, below.

### 1.    Plaintiff Keith Connell, Inc.

Plaintiff Keith Connell, Inc. states that P.K. Produce's payment of $2,991 was in payment for two invoices, Invoice V13232C and Invoice K13132C.  (Doc. No. 92 at pp. 4-5.)   Keith Connell, Inc. states that Invoice K13132C is not included in its claim and, therefore, its response "centers solely on Invoice V13232C."  (*Id.*)  Referencing several exhibits attached to its Response, Keith Connell, Inc. explains, in detail, that it fully credited P.K. Produce's payment. (*Id.*) The P.K. Produce Defendants did not seek leave to respond to Plaintiff Keith Connell, Inc.'s argument and/or exhibits.

The Court has carefully reviewed the exhibits attached to both the P.K. Produce Defendants' Objection and to Plaintiff Keith Connell, Inc.'s Response, and agrees with Plaintiff Keith Connell, Inc.  The payment identified by P.K. Produce (Check #6162) references both Invoice V13232C and Invoice K13132C and is in the amount of $3,933.80.  (Doc. No. 84-1.)  Plaintiff Keith Connell, Inc.'s exhibits demonstrate that, of this amount, Plaintiff credited $3772.90 to Invoice K13132C, which

fully paid that Invoice.  (Doc. Nos. 92-2 through 92-4.)  The remaining amount ($161.00) was credited towards Invoice V13132C, leaving a balance of $2,991.00.

Accordingly, the Court overrules the P.K. Produce Defendants' Objections as to Plaintiff Keith Connell, Inc.

### 2.    Plaintiff Farm Wey

Plaintiff Farm Wey asserts that the P.K. Produce Defendants "have this a bit backwards." (Doc. No. 91 at p. 2.)  Referencing an exhibit attached to its response, Farm Wey states that Invoice 91886 reflects a credit of $7,875.00 from P.K. Produce Check #6154 towards the total invoice balance of $9355.00, leaving a balance owing of $1,480.  (*Id*.)  The P.K. Produce Defendants did not seek leave to respond to Plaintiff Farm Wey's argument and/or exhibit.

The exhibits attached to the parties' filings reflect the following.  On August 27, 2018, P.K. Produce submitted Check #6154 to Farm Wey in the amount of $58,961.00.  (Doc. No. 84-2.)  This check references eight (8) invoices, identified as invoices 90597, 91821, 91886, 91894, 71993, 92023, 92074, and 92025.  (*Id*.)  The P.K. Produce Defendants' objection only references one of these invoices, i.e., Invoice 91886.  (Doc. No. 84 at p. 3.)  Defendants do not raise any objection with respect to any of the other invoices listed on Check #6154, nor do they attach any of these invoices to their Objection.

Invoice 91886 is attached as an Exhibit to Farm Wey's response.  (Doc. No. 91-2.)  This invoice reflects that $9,355.00 was billed to P.K. Produce, and a credit of $7,875.00 was applied. (*Id*.)  This leaves a total amount owing of $1,480.00.  (*Id*.)

The P.K. Produce Defendants do not provide any explanation or supporting evidence in their Objection to support their apparent argument that the payment reflected in Check #6154 should have

covered the entirety of Invoice 91886.  As noted above, Check #6154 purports to pay eight separate invoices.  Aside from Invoice 91886, Defendants have not provided (and this Court does not otherwise have before it) any of the seven other invoices referenced in that check.  Thus, the Court does not have any evidence regarding the amounts owed on these seven invoices[7] and cannot determine whether additional amounts from Check #6154 should have been credited towards Invoice 91886.

The Court finds that Defendants failed to satisfy their burden of providing evidence to support their Objection to this Invoice.  Accordingly, and in the absence of any meaningful support thereof, the Court rejects the P.K. Produce Defendants' Objection with regard to Plaintiff Farm Wey.

### 3.      Plaintiff B&D Produce

As noted above, the P.K. Produce Defendants assert that Plaintiff B&D Produce failed to credit P.K. Produce for a payment of $13,435.00 included in Check #6188, for Invoice 18-1058. (Doc. No. 84 at p. 3.)  The P.K. Produce Defendants also argue, summarily, that Plaintiff B&D Produce "fail[ed] to credit Defendant P.K. Produce, Inc., for the hand written notations on the copies of invoices reflecting payments made, including inconsistences on duplicate invoices showing different amounts due."  (*Id.*)  Defendants do not reference or attach any evidence in support of this latter argument.

Plaintiff B&D Produce first argues that P.K. Produce's Check #6188 did not, in fact, reflect payment of Invoice 18-1058.  (Doc. No. 93 at p. 3.)  Rather, B&D Produce asserts that P.K. Produce requested a credit on this invoice in the amount of $951.20, claiming that it was a "troubled load."

---

[7] The Court also notes that none of the other seven invoices referenced in Check #6154 are attached to Plaintiff Farm Wey's Amended Complaint.  (Doc. No. 106-1.)

(*Id.*)  B&D Produce maintains that P.K. Produce never produced any evidence that this particular

load was "troubled."  (*Id.*)  Therefore, B&D Produce did not consent to an assertion of credit as to

Invoice 18-1058.  (*Id.*) In support of its argument, B&D Produce provides the Affidavit of William

McBryde, the proprietor of B&D Produce.  (Doc. No. 93-4.)  Therein, Mr. McBryde avers as follows:

> 1.  I have reviewed check number 6188 submitted by Defendants P.K. Produce, Inc., Debra Kasapis and Sipisak Properties, LLC, and attached hereto as Exhibit "1."  Check number 6188 did not constitute payment of the outstanding amount due on Invoice 18-1058 referenced on the check.  Instead, Dan Patalita claimed that P.K. Produce was entitled to a credit on invoice 18-1058 of $951.20 because he claimed that it was a troubled load.  However, no documentation, such as a USDA inspection certificate, was ever provided to B&D Produce to support Dan Patalita's allegations that invoice 18-1058 was a troubled load.  Based on the assertion that invoice 18-1058 was a troubled load, P.K. Produce subtracted $951.20 from the other invoices listed on check number 6188.
>
> 2.  To date, B&D Produce Sales, LLC has not received payment for invoice 18-1058.

(*Id.*)  The P.K. Produce Defendants did not seek leave to respond.

The only evidence before this Court relative to this Objection is Check #6188 and Mr.

McBryde's affidavit. P.K. Produce's Check #6188 is dated September 15, 2018 and is in the amount

of $49,289.80.  (Doc. No. 84-3.)  This check references five invoices, identified as 18-1042, 18-1049,

18-1032, 18-1033, and 18-1058.  (*Id.*)  The handwriting on the check is difficult to decipher, but it

also appears to state "0012 LOT 1105 1128."  (*Id.*)  Defendants have not provided this Court with

any of the five invoices referenced in Check #6188.  Nor has any explanation been provided as to the

meaning of the reference in that Check to "0012 LOT 1105 1128."  Thus, the Court cannot determine

whether any amount from Check #6188 should have been credited towards Invoice 18-1058.

On the other hand, Plaintiff B&D Produce has come forward with evidence, in the form of

Mr. McBryde's affidavit, that B&D Produce has not received payment for Invoice 18-1058.  Plaintiff

B&D Produce has also come forward with evidence, again in the form of Mr. McBryde's sworn affidavit, that P.K. Produce did not provide documentation supporting its allegations that Invoice 18-1058 was a "troubled load" and that B&D Produce therefore refused to credit P.K. Produce $951.20 towards that invoice.  The P.K. Produce Defendants failed to respond in any fashion to Mr. McBryde's Affidavit.

As noted above, the P.K. Produce Defendants have the burden of providing evidence to support their Objections.  They failed to satisfy their burden with respect to Invoice 18-1058.  Accordingly, and in the absence of any meaningful support thereof, the Court rejects the P.K. Produce Defendants' Objection with regard to Invoice 18-1058.

The P.K Produce Defendants also assert that Plaintiff B&D Produce "fail[ed] to credit Defendant P.K. Produce, Inc., for the hand written notations on the copies of invoices reflecting payments made, including inconsistences on duplicate invoices showing different amounts due." (Doc. No. 84 at p. 3.)  In response, Plaintiff B&D Produce notes that "Defendants have failed to identify any invoices other than invoice 18-1058 that Defendants believe has been paid, or that has been partially paid."  (Doc. No. 93 at p. 3.)  Plaintiff B&D Produce also argues that Defendants' Objection is without merit because Defendants fail to identify any specific invoices that allegedly show inconsistencies.  (*Id.* at p. 4.)

The Court agrees with Plaintiff B&D Produce.  The P.K. Produce Defendants do not identify any specific invoices that allegedly contain hand-written notations reflecting payment or show inconsistences in the amounts due.  Nor do Defendants reference or direct this Court's attention to any evidence in support of this argument.  It is not this Court's function to scour through all of Plaintiff B&D Produce's invoices and attempt to identify the invoices that Defendants may be

16

referring to or otherwise construct an argument on Defendants' behalf.  Defendants have failed entirely to support this Objection and it is, therefore, denied.

Accordingly, P.K. Produce Defendants' Objection with regard to Plaintiff B&D Produce is without merit and denied.

### C. "Failure to provide any inspection reports or documentation relating to any adjustments made to invoices or indicate no such documents exist"

The P.K. Produce Defendants next argue that the claims of Plaintiffs Great Lakes Packers, Keith Connell, Inc., C.H. Robinson, Original Produce, The Players Sales, The Midwest's Best Produce Company, Victory Farms, Farm Wey Produce, and R&R Produce should be held invalid because of these Plaintiffs' "failure to provide any inspection reports or documentation relating to adjustments made to invoices or indicate that no such documents exist."  (Doc. No. 84.)  The P.K. Produce Defendants provide no further discussion of, or support for, this argument.

In response, the C.H. Robinson Plaintiffs state that "any invoice adjustments have already been noted on the documents previously circulated and have been accounted for."  (Doc. No. 87 at p. 4.)  Plaintiff Farm Wey states that it "is not aware of any inspection reports or documents relating to price adjustments for any of the invoices that are the subject to this claim."  (Doc. No. 91 at p. 2.) Plaintiff R&R Produce asserts that four of its invoices[8] were adjusted downward prior to inclusion on its PACA Account Interest Chart, and that no further adjustments are necessary.  (Doc. No. 88 at p. 3-4.)  Finally, Plaintiffs Great Lakes Packers and Keith Connell, Inc. state that Defendants' Objection "wrongfully places the burden upon [Plaintiffs] to produce documentation allegedly due

---

[8] Specifically, Plaintiff R&R Produce states that (1) Invoice 34602 was adjusted from $17,106.00 to $16,050.00; (2) Invoice 34606 was adjusted from $16,308.05 to $16,084.05; (3) Invoice 34613 was adjusted from $18,007.00 to $16,280.00; and (4) Invoice 34624 was adjusted from $17,210.00 to $15,911.50.  (Doc. No. 88 at p. 3-4.)

17

to the P.K. Produce parties."  (Doc. No. 92 at p. 3-4.)  In addition, Plaintiffs Great Lakes Packers and Keith Connell, Inc. maintain that "the invoices [they] provided to P.K. Produce reflect the outstanding balance, taking into account any adjustments agreed-upon by the parties and federal inspections."  (*Id.* at p. 4.)

The P.K. Produce Defendants did not seek leave to file a reply to the above Plaintiffs' responses.

For the following reasons, the P.K. Produce Defendants' Objection is without merit. Defendants have failed to direct this Court's attention to any specific invoices that allegedly have been (or should have been) adjusted based on "inspection reports or other documentation."  Nor do these Defendants direct this Court's attention to any inspection reports or other documentation that they believe warrant such an adjustment.  As noted above, the above Plaintiffs indicate that any necessary invoice adjustments have been accounted for.  The P.K. Produce Defendants did not seek leave to reply to these Plaintiffs' responses.  In sum, the P.K. Produce Defendants have wholly failed to support their Objection.  This Objection is, therefore, denied.

> **D.** **"Failure to include signed written agreement stating different payment terms than required by PACA"**

The P.K. Produce Defendants next argue that the PACA claims of Plaintiffs C.H. Robinson, Original Produce, The Midwest's Best Produce Company, Victory Farm Sales and Farm Wey Produce are invalid because these Plaintiffs "fail[ed] to include [a] signed written agreement stating different payment terms than required by PACA."  (Doc. No. 84.)  The P.K. Produce Defendants

18

provide no further explanation of this argument.  No do they include any citation to legal authority, legal analysis, or application of the law to the specific facts of this case.[9]

Defendant Paul Kasapis (hereinafter "Mr. Kasapis") also filed an Objection raising the same argument, which contains slightly more detail.  (Doc. No. 85.)  Therein, Mr. Kasapis asserts that PACA's implementing regulations set a default payment term of 10 days and provide that parties who elect to use different terms must reduce their agreement to writing before entering into the transaction. (*Id.*)  Mr. Kasapis argues that Plaintiffs C.H. Robinson, Original Produce, The Midwest's Best Produce Company, Victory Farm Sales and Farm Wey Produce included longer payment terms of up to 30 days on their respective invoices.  (*Id.*)  Mr. Kasapis asserts that "[s]ince claimants failed to produce the written agreement required by [7 C.F.R.] § 46.2(aa)(11), these claims must be held invalid by this Court."  (*Id.*)

Plaintiffs argue that, because none of their payment terms exceeded 30 days, their respective PACA claims are valid despite the failure to attach a prior written agreement that extended the payment period beyond the default 10-day period set forth in PACA.  (Doc. Nos. 87, 89, 90, 91.)

PACA makes it unlawful for any Produce buyer "to fail or refuse truly and correctly to account and make full payment promptly in respect of any transaction in [Produce] to the person with whom such transaction is had...."  7 U.S.C. § 499b(4).  "Full payment promptly" means payment within ten (10) days after the buyer accepts the Produce, unless the parties agreed to extend the time for payment. 7 C.F.R. § 46.2(aa).  Under 7 C.F.R. § 46.2(aa)(11):

---

[9] The P.K. Produce Defendants' Objection is deficient in nearly every possible respect.  Because Defendant Paul Kasapis raised the same argument in a marginally more thorough fashion, the Court will address it herein.  However, the P.K. Produce Defendants are advised that, in the future, the Court will not address arguments that are raised in a purely perfunctory manner and will, instead, deem such arguments waived.

> Parties who elect to use different times of payment ... must reduce their agreement to writing before entering into the transaction and maintain a copy of the agreement in their records. If they have so agreed, then payment within the agreed upon time shall constitute "full payment promptly": Provided, That the party claiming the existence of such an agreement for time of payment shall have the burden of proving it.

7 C.F.R. § 46.2(aa)(11); *see also* 7 C.F.R. § 46.46(e)(1) ("The times for prompt accounting and prompt payment are set out in § 46.2(z) and (aa).  Parties who elect to use different times for payment must reduce their agreement to writing before entering into the transaction and maintain a copy of their agreement in their records, and the times of payment must be disclosed on invoices, accountings, and other documents relating to the transaction.").  However, "[t]he maximum time for payment for a shipment to which a seller, supplier, or agent can agree, prior to the transaction, and still be eligible for benefits under the trust is 30 days after receipt and acceptance of the [Produce]...." 7 C.F.R. § 46.46(e)(2).  After the transaction, a seller who "has met the eligibility requirements ... will not forfeit eligibility under the trust by agreeing in any manner to a schedule for payment of the past due amount or by accepting a partial payment." 7 C.F.R. § 46.46(e)(3).

Here, the invoices of Plaintiffs C.H. Robinson, Original Produce, The Midwest's Best Produce Company, Victory Farm Sales and Farm Wey Produce state payment terms of either 21 or 30 days.  (Doc. No. 89 at p. 2; Doc. No. 90 at p. 2.)  These Plaintiffs each acknowledge that they did not create or maintain a prior written agreement with P.K. Produce in advance of these invoices.  (*Id.*)  However, they assert that that the lack of a written agreement does not invalidate their claims because "no provision of the statute or the regulations disqualifies a seller from PACA trust benefits simply because the seller unilaterally changed the payment term on the invoice to a period of other than the standard 10-day period, but in no circumstance greater than 30 days."  (Doc. No. 89 at p. 2) (quoting *In re Atlanta Egg and Produce, Inc.,* 321 B.R. 746, 755 (N.D. Ga. 2005)).  Because their invoices

20

included the requisite statutory language and the payment term did not exceed 30 days, Plaintiffs assert that they "properly preserved their PACA trust benefits and consequently maintain perfected PACA trust claims." (*Id.*)

Neither the P.K. Produce Defendants or Mr. Kasapis sought leave to file a reply.

For the following reasons, the Court agrees with Plaintiffs. District courts faced with similar circumstances have found that PACA claimants did not waive their protections under PACA so long as the payment period did not extend beyond 30 days. For example, in *In re Atlanta Egg & Produce, Inc.,* 321 B.R. 746 (N.D. Ga. 2005), the court found that sellers of produce did not lose their PACA trust benefits when they gave notice of intent to preserve their trust benefits by means of their invoices but listed payment terms other than the regulatory ten days on their invoices without a written agreement between the parties. *Id*. at 756. The court explained as follows:

> With respect to the remaining invoices, i.e., those that included payment terms other than 10 days, this Court also concludes that those sellers properly preserved the benefits of the trust. While the Court agrees with Appellants that PACA requires any agreement to extend payments terms to be in writing, *see, e.g*., 7 U.S.C. § 499e(c)(3)(ii), in this case, it is undisputed that there was no such agreement. **Because there was no agreement—oral or written—to extend the payment terms beyond the standard 10 days, the listing of payment terms other than 10 days had no legal relevance. No provision of the statute or regulations disqualifies a seller from PACA trust benefits simply because the seller unilaterally changed the payment term on the invoice to a period other than the standard 10–day period, but in no circumstance greater than 30 days. These sellers satisfied the notice requirement by including the requisite language on the face of their invoices to Atlanta Egg, see 7 U.S.C. § 499e(c)(4), and the payment period on the invoices did not exceed thirty days. [fn omitted]. In compliance with 7 U.S.C. § 499e(c)(4), these sellers, therefore, properly preserved their PACA trust benefits.**
>
> The Court's interpretation of the PACA statute and regulations is further supported by the Third Circuit's decision in *Idahoan Fresh v. Advantage Produce, Inc*., 157 F.3d 197 (1998). Idahoan Fresh ("Idahoan"), the seller, and Advantage Produce, Inc. ("Advantage"), the buyer, failed to enter into a written agreement extending the payment term. [fn omitted]. Twenty-eight of the thirty outstanding invoices issued by

21

Idahoan to Advantage, however, stated "Payment Terms: Net 20 days." The remaining two invoices contained no payment term.

The issue presented in *Idahoan* was whether a seller forfeited its right to participate in the PACA trust if it failed to reduce to writing an agreement to extend the payment term.  According to the Third Circuit, "[t]he plain and unambiguous language of the section does not provide ... that a written agreement is a precondition of being entitled to the statutory trust benefits. Rather, the requirement is relevant to assessing when prompt payment is due and therefore when notice is timely." *Idahoan,* 157 F.3d at 203.  The writing requirement, therefore, "relates to the enforceability of an agreement to extend a payment term, but does not disqualify an unpaid seller from receiving trust benefits." *Idahoan*, 157 F.3d at 204. Finding that Idahoan (1) satisfied the notice requirement by including the requisite language on the face of their invoices to Advantage and (2) did not agree to a payment period over 30 days, the Third Circuit concluded that their failure to reduce to writing an agreement to extend the payment term did not disqualify them, from their share in a pro-rata distribution of the statutory trust.  *See also Hull Co. v. Hauser's Foods, Inc*., 924 F.2d 777 (8th Cir.1991) (holding that oral agreements between produce sellers and buyers as to payment terms beyond the standard ten days after delivery had no effect on the seller's right to trust protection under PACA).

In *Idahoan*, as in this case, the seller's invoices included payment terms other than ten days without a written agreement extending those terms between the parties prior to the transaction. Like the Third Circuit in *Idahoan*, this Court finds that in such instances, the seller does not lose its right to PACA benefits.

*Id.* at 755-756 (emphasis added) (footnotes omitted).[10]  *See also Produce Alliance, et al. v. Let-Us*

*Produce,* 776 F.Supp.2d 197, 203-210 (E.D. Va. 2011) (finding that "non-conforming agreements to

---

[10] Although not cited by any party, the Court notes that the Sixth Circuit's decision in *Overton Distributors, Inc. v. Heritage Bank*, 340 F.3d 361 (6th Cir. 2003) is distinguishable from the instant action. In *Overton*, the parties had a written agreement setting payment terms of ten days within a 15–day accrual. The payment terms on invoices from 1998 forward, however, were "10 days EOM," establishing that the payment was due within 10 days after the end of each calendar month in which produce was delivered. The Sixth Circuit noted that the parties had clearly agreed in 1994 to terms different from the standard 10–day payment provision contained in the PACA regulations. *Overton,* 340 F.3d at 366. Consequently, "PACA and the regulations mandate that those terms had to be disclosed on the invoices." *Id.* Moreover, because payments for produce delivered on the first of the month could be made as late as 40 days after the date of acceptance, the invoices indicated that Overton was agreeable to a payment schedule outside of PACA's protection. The Sixth Circuit, therefore, held that Overton was not entitled to assert priority over accounts receivable that arose from the sale of its produce. Here, Defendants do not argue that the parties had a written agreement at all, much less one that was inconsistent with the terms on the Plaintiffs' invoices. Further, Defendants herein do not argue that Plaintiffs' invoices allowed for payment beyond 30 days after date of acceptance.

22

extend payment terms for more than 10 days, but in no case more than 30 days, do not invalidate timely noticed and otherwise valid PACA trust rights"); *Chuck Olsen Co., Inc. v. F.P.D., Inc*. 2014 WL 12558273 at * 8 (C.D. Cal. Sept. 17, 2014) (holding seller retained PACA trust benefits where invoices included payment terms other than 10 days but not greater than 30 days and where there was no agreement – written or oral – to extend payment term beyond statutory term of 10 days).

Notably, here, Defendants do not argue, or present any evidence, that any of the Plaintiffs at issue extended the payment terms beyond 30 days, either via pre-transaction written agreement, oral agreement, or course of dealing. Nor do Defendants argue, or present any evidence, that, due to a lag time between delivery and invoice, payment extended (or would have extended) beyond 30-days. Finally, Defendants do not argue that any of the invoices at issue fail to contain the required statutory language. Defendants do not cite a single case holding that, under these circumstances, a claimant waives its protections under PACA.

Accordingly, and in light of the above, the Court finds that Defendants have failed to demonstrate that Plaintiffs C.H. Robinson, Original Produce, The Midwest's Best Produce Company, Victory Farm Sales and Farm Wey Produce waived their PACA rights. Defendants' Objection is without merit and rejected.

### E.    Failure of Plaintiff B&D Produce to include supporting invoices in PACA Trust Claim Packet

Finally, the P.K. Produce Defendants argue that Plaintiff B&D Produce, Inc.'s PACA claim is invalid because it failed to include any supporting invoices in its PACA Trust Claim packet. (Doc. No. 84 at p. 3.) They complain that they "had to rely on B&D Produce, Inc.'s separate document production produced within its First Supplemental Initial Disclosure to attempt to determine what invoices support the claims being made." (*Id*.)

23

In response, Plaintiff B&D Produce states that it did, in fact, provide Defendants with its PACA Trust Chart and supporting documents well over a year ago, on July 1, 2019.  (Doc. No. 93 at p. 2.)  Plaintiff then revised its PACA Trust Chart and sent a supplementation to Defendants on September 4, 2019.  (*Id*.)

The P.K. Produce Defendants did not seek leave to reply to Plaintiff B&D Produce's response.

For the following reasons, the Court finds this Objection to be without merit.  Plaintiff B&D Produce states that it provided all supporting invoices in July and September 2019.  Indeed, the P.K. Produce Defendants themselves acknowledge that they received B&D Produce's documents as part of B&D Produce's supplemental initial disclosure.  The P.K. Produce Defendants cite no law that would support invalidating Plaintiff B&D Produce's PACA claim under these circumstances.

Accordingly, the P.K. Produce Defendants' Objection is without merit and overruled.

## IV.    Conclusion

For all the reasons set forth above, Plaintiffs' Joint Motion for Entry of an Order Determining Validity and Extent of PACA Trust Claims (Doc. No. 83) is GRANTED.  The Court finds the Plaintiffs' claims to be perfected and valid PACA trust claims in the following amounts:

1)    Great Lakes Packers, Inc: Principal of $64,616.80 plus accrued interest of $10,958.19, for a total of $75,574.99.

2)     Keith Connell, Inc: Principal of $37,702.95 plus accrued interest of $13,445.12, for a total of $51,148.07.

3)    C.H. Robinson Worldwide, Inc: Principal of $32,449.45 plus accrued interest of $12,863.56, for a total of $45,313.01.

4)    Original Produce Distributing, Inc: Principal of $9,504.00 plus accrued interest of $3,552.67, for a total of $13,056.67.

5)    The Players Sales, Inc: Principal of $95,646.60 plus accrued interest of $37,080.45, for a total of $132,727.05.

24

6)      The Midwest's Best Produce Company: Principal of $26,411.00 plus accrued interest of $4,774.01, for a total of $31,185.01.

7)      Victory Farm Sales, LLC: Principal of $29,201.50 plus accrued interest of $4,734.08, for a total of $33,935.58.

8)      B & D Produce Sales, LLC: Principal of $316,771.97 plus accrued interest of $134,432.81 for a total of $451,204.78.

9)      Farm-Wey Produce, Inc: Principal of $122,156.00 plus accrued interest of $55,767.31, for a total of $177,923.31.

10)     R&R Produce, Inc: Principal of $131,983.35 plus accrued interest of $47,639.72, for a total of $179,623.07.

*See* Doc. No. 185-2.

Interest has been accrued on all PACA trust claims at either the parties' contractual rate or the Ohio state legal rate up to and including September 30, 2020, and the Court finds that the inclusion of interest is appropriate and approved.

Attorney fees and costs have not been liquidated at this juncture, despite the fact that certain PACA claimants maintain express contractual claims for attorney fees and costs. Those PACA claimants with contractual rights to attorney fees and costs have reserved their rights to seek same at a later date, upon entry of Judgment or settlement, and to petition the Court for priority of payment of the attorney fees and costs on a common fund basis or otherwise.

**IT IS SO ORDERED.**


                                        *s/Pamela A. Barker*
                                        PAMELA A. BARKER
Date:  October 6, 2020                  U. S. DISTRICT JUDGE