**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| GREAT LAKES PACKERS, INC., et al. | ) | |
| | ) | |
| Plaintiffs, | ) | CIVIL CASE NO.: 1:18-cv-02754 |
| v. | ) | (Lead Case) |
| | ) | |
| P.K. PRODUCE, INC., et al. | ) | JUDGE PAMELA A. BARKER |
| | ) | |
| Defendants. | ) | Trial Date: September 19, 2022 |

**PLAINTIFF' R & R AG CONSULTING, INC.'S TRIAL BRIEF**

Plaintiff R&R Ag Consulting, Inc. (formerly known as R & R Produce, Inc.) ("Plaintiff" or "R & R"), by and through its respective undersigned counsel, hereby respectfully submits to this Court its Trial Brief, pursuant to the Civil Trial Order dated February 1, 2022, Doc. No. 231 (the "Civil Trial Order"). The other named Plaintiffs in this action (herein referred to as the "Other Plaintiffs") filed a Notice of Partial Settlement of this case on September 7, 2022, Doc. No. 257, and hence are not parties to this Trial Brief, although this Court previously authorized the filing of a joint trial brief. (Minute Order dated August 19, 2022, Doc. No. 254, ("Final Pretrial Conference Order"), at 4).

**STATEMENT OF FACTS**

1. **Facts Relating to P.K. Produce's Breach of Contracts with Plaintiff.**

   A.    **Invoice Terms & Failure to Pay**

From August 2018 through October 2018, R & R sold fresh produce (the "Produce") to P.K. Produce, Inc. ("P.K. Produce"). P.K. Produce failed to remit payment for the Produce on the following eight (8) listed invoices: Invoice No. 34595 in the amount of $12,315.00, Invoice No. 34599 in the amount of $15,587.20, Invoice No. 34602 in the amount of $16,050.00, Invoice No.

34606 in the amount of $16,084.05, Invoice No. 34613 in the amount of $16,280.00, Invoice No.

34619 in the amount of $20,825.10, Invoice No. 34624 in the amount of $15,911.50, Invoice No.

34629 in the amount of $18,930.50 (collectively, the "PACA Invoices"), for a total amount of

$131,983.35.

Each of the PACA Invoices related to Produce sold on an FOB basis, with the contract price

listed on each PACA Invoice, and the payment terms listed on each PACA Invoice as "Net 10 days".

No objection was taken by P.K. Produce to any of the amounts stated in the PACA Invoices.

Each of the PACA Invoices contained the proper PACA trust notice, stated as follows: "The

perishable agricultural commodities listed on this invoice are sold subject to the statutory trust

authorized by section 5 (c) of the Perishable Agricultural Commodities Act, 1930 (7 U.S.C. 499e(c)).

The seller of these commodities retains a trust claim over these commodities, all inventories of food

or other products derived from these commodities, and any receivables or proceeds from the sale of

these commodities until full payment is received".

Each of the PACA Invoices provided that interest would accrue on any past-due account

balance at the rate of 1.5% per month (18% per annum).

Each of the PACA Invoices provided that in the event that a collection action becomes

necessary P.K. Produce would "pay all costs of collection, including attorneys' fees."

No part of the $131,983.35 due pursuant to the PACA Invoices was paid by P.K. Produce to

R & R. Nor has any accrued interest or attorneys' fees and costs incurred by R & R for collection of

the amounts owed been paid by P.K. Produce to R & R.  However, the amount of $10,117.90,

ordered by this Court to be distributed to R & R from IOLTA trust funds, pursuant to Court Order

Dated September 2, 2022, Doc No. 256 ("Distribution Order"), was received by Plaintiff on

September 10, 2022, and has been applied to the debt owed by P.K. Produce to R & R as of that date.

**B.      The PACA Administrative Complaint and Default Order**

On or about December 3, 2018, R & R commenced a reparation proceeding under PACA and the Rules of Practice under the PACA (7 C.F.R. §§ 47.1-47.49) (Rules of Practice), by filing a timely reparation Complaint (the "PACA Complaint") against P.K. Produce with the U.S. Department of Agriculture PACA Branch ("PACA Branch") to collect the amounts due pursuant to the PACA Invoices, under the Perishable Agricultural Commodities Act, 1930 ("PACA"). Thereafter, the PACA Complaint was duly served on P.K. Produce, but P.K. Produce failed to timely file a response to the PACA Complaint.

On or about March 27, 2019, a Judicial Officer from the Office of the U.S. Secretary of Agriculture issued a Default Order with respect to the PACA Complaint (the "PACA Default Order"), which PACA Default Order concluded that P.K. Produce had violated Section 2 of the PACA (7 U.S.C. § 499b), and as such was required to pay R & R the sum of $131,983.35 as reparation, with interest at the rate of 18% per annum (1.5% per month) from November 1, 2018 thru March 27, 2019, plus additional interest at an unspecified rate on the sum of $131,983.35 from March 27, 2019 until paid in full, plus the amount of $500 for the PACA Complaint handling fee, within 30 days of the date of issuance of the PACA Default Order (the "PACA Judgment").

On or about March 28, 2019, the Chief of the Dispute Resolution Branch of the PACA Branch sent a letter to R & R which enclosed the PACA Default Order (the "PACA Default Order Letter"). The PACA Default Order Letter informed R & R that if P.K. Produce did not pay the amount of the PACA Judgment within 30 days of issuance of the PACA Default Order then the

PACA License issued to P.K. Produce would be suspended effective as of the close of business on May 6, 2019. The PACA Default Order Letter further informed R & R that the PACA Branch had determined that Defendant Paul Kasapis ("Paul") was a responsibly connected individual to P.K. Produce. The PACA Default Order Letter further informed R & R that if the PACA Judgment was not satisfied in accordance with the terms of the PACA Default Order that R & R had a right to file suit in U.S. District Court to enforce its rights pursuant to Section 7(b) (7 U.S.C. §499g(b)) of PACA.

P.K. Produce failed to pay R & R the amount due pursuant to the PACA Default Order within 30 days of the date of issuance of the PACA Default Order.

### C. Complaint Filed in This Court by R & R

After P.K. Produce failed to pay R & R the amount due pursuant to the PACA Default Order R & R filed its Complaint in this Court, with the current operative pleading at Doc. No. 97, and the exhibits to the Plaintiff's Complaint at Doc. Nos. 97-1, 97-2 and 97-3 (collectively, the "Complaint"). The PACA Invoices are part of **Exhibit "1"** to the Complaint.

### 2. Facts Relating to Breach of Fiduciary Duty/Nondischargeability—Paul Kasapis.

On or about April 1, 2017, P.K. Produce commenced doing business as a commission merchant, engaging in the business of buying and selling perishable agricultural commodities, more specifically fresh produce, at the Cleveland Terminal Market. At all times relevant to the Plaintiff's claims, P.K. Produce was licensed under PACA.

From April 1, 2017 thru June 19, 2018, Paul was the sole officer, director and shareholder of P.K. Produce, and there was never any corporate meetings. Paul was the only person who was ever listed as a principal on the P.K. Produce PACA license. From April 1, 2017 thru June 19, 2018, Paul

4

had complete control of the business and of the disposition of the proceeds derived by P.K. Produce from the sale of produce.

From April 1, 2017 thru June 19, 2019, P.K. Produce paid some of its ordinary business expenses in cash it received from the sale of produce, and paid other ordinary business expenses by check from its bank accounts where the proceeds of the sale of produce were deposited. From April 1, 2017 thru June 19, 2019, P.K. Produce disbursed monies to Paul and Debra from the proceeds of the sale of produce either for salaries/draws, reimbursement of business expenses or for payment of personal expenses. All of these payments and disbursements constitute the dissipation of PACA trust assets.

On June 19, 2018, on the advice of legal counsel, Paul resigned as President of P.K. Produce and transferred his shares in P.K. Produce to his wife Debra Kasapis ("Debra") for no consideration. Paul did so because he had been convicted of a felony, and as a result, P.K. Produce could no longer maintain a bank account if Paul continued to own shares of P.K. Produce or was an officer or director of P.K. Produce. Prior to the transfer of shares, Debra was not involved with the business of P.K. Produce and had no experience in the produce industry.

On June 28, 2018, Paul went to prison to serve time for his felony conviction.  Prior to going to prison, Paul asked his close friend, Jeffery Heestand ("Heestand") to maintain the business of P.K. Produce and to keep it going. Paul spent two or three days training Heestand about the business and made a list in a notebook of what Heestand should do to operate the business.

Paul told Heestand, Debra and others that he intended to come back and operate P.K. Produce once he finished his prison sentence.

While Paul was in prison, Paul regularly communicated with Heestand and Debra thru texts, emails, telephone calls, and at least one prison visit by Heestand, about the business of P.K. Produce. While Paul was in prison, Debra consulted with Paul and obtained his guidance on all major decisions she made with respect to P.K. Produce, including her decision to shut-down P.K. Produce on or about October 31, 2018. While Paul was in prison, Heestand and Debra were the only persons who were authorized to disburse funds from the bank account of P.K. Produce.

While Paul was in prison, Paul was in a position to control the PACA trust assets of P.K. Produce because he directed and advised both Debra and Heestand as to the operations of the business of P.K. Produce.

While Paul was in prison, P.K. Produce engaged in the same business practices it had engaged in prior to Paul going to prison. P.K. Produce paid some of its ordinary business expenses in cash it received from the sale of produce and paid other ordinary business expenses by check from its bank accounts where the proceeds of the sale of produce were deposited. P.K. Produce disbursed monies to Paul and Debra from the proceeds of the sale of produce either for salaries, reimbursement of business expenses or for payment of personal expenses. All of these payments and disbursements constitute the dissipation of PACA trust assets.

During all relevant time periods, P.K. Produce never prepared a balance sheet, profit and loss statement, a general ledger, or list of assets. P.K. Produce never filed federal or state income tax returns in 2017, 2018 or 2019.

After P.K. Produce ceased its operations on October 31, 2018, it had insufficient monies available to pay its produce creditors, including Plaintiff, and yet disbursed funds to its principals, Debra and Paul.

6

### 3. Facts Relating to Disgorgement—Paul, Debra & Kasapis Trust.

During the period commencing on April 1, 2017 and continuing after P.K. Produce ceased to operate on October 31, 2018, Paul, Debra and/or The Kasapis Family Irrevocable Intervivos Trust Dated April 6, 2003 (the "Kasapis Trust") received monies derived from the sale of produce by P.K. Produce, either as direct payments, or thru the payment of expenses on their behalf by P.K. Produce. Those amounts include $4,665.00 for Debra, $21,954.90 for Paul, $8,514.10 for the Kasapis Trust, and $70,271 jointly to Debra and Paul. All of these monies received by those three parties are subject to disgorgement.

### CONTROLLING LAW

### 1. Breach of Contract against P.K. Produce, Inc. (Doc. No. 97 at Count I).

### A. Legal Elements:

To prove a breach of contract under Ohio law, the following elements must be established: 1) the existence of a valid contract; 2) performance by the plaintiff; 3) breach by the defendant; and 4) damage or loss to the plaintiff. *See Samadder v. DMF of Ohio, Inc.,* 154 Ohio App.3d 770, 778, 798 N.E.2d 1141 (2003); *Doner v. Snapp,* 98 Ohio App.3d 597, 600, 649 N.E.2d 42 (1994); *Thomas v. Publishers Clearing House, Inc.,* 29 Fed. Appx. 319, 322 (6th Cir. 2002).

Here, all of the elements of the Plaintiff's breach of contract claims have been previously established when the Court entered its Memorandum Opinion & Order on October 6, 2020, Doc. No. 186 ("PACA Validity Order"), which ruled that the Plaintiff has a valid and perfected PACA Trust claim.  This is because the elements required to be established by the Plaintiff in order to obtain the PACA Validity Order included all of the necessary elements required to establish the Plaintiff's breach of contract claims.

The only reason that this Court did not previously enter partial summary judgment on Plaintiff's breach of contract claim is because when the Plaintiff filed its partial summary judgment motion in conjunction with the Other Plaintiffs, the Plaintiff (as well as the Other Plaintiffs) failed to identify the specific counts of its First Amended Complaint, Doc. No. 97 (the "Complaint") on which it sought summary adjudication. (Memorandum Opinion & Order, dated June 2, 2021, Doc. No. 195 ("PSJ Order"), at 13-14). This Court then confirmed at the Final Pretrial Conference that it would require the Plaintiff to prove up its breach of contract claim (Final Pretrial Conference Order, at 3), because of this technical deficiency in the prior pleadings.

It is established law that the elements of a  Perishable Agricultural Commodities Act ("PACA") trust claim include:  "a **contract for sale of perishable agricultural commodities; purchase and receipt of the perishable agricultural commodities** by a commission merchant, dealer, or broker engaged in the handling of produce in interstate and/or foreign commerce, who is thus subject to PACA; **a failure to pay fully and promptly,** or a failure to maintain the trust as required by § 499e(c); and preservation of trust rights by the seller by notifying of intent to preserve the benefits of the trust on invoices or billing statements." *Family Tree Farms, LLC v. Alfa Quality Produce, Inc.*, 2009 U.S. Dist. LEXIS 16940, *13 (ED CA 2009), *citing* 7 U.S.C. §§ 499b, 499e(c); *Sunkist Growers, Inc. v. Fisher,* 104 F.3d 280, 284 (9th Cir. 1997). [Bolded provisions are the same provisions required to establish a breach of contract].

*See also,* 7 C.F.R. § 46.46(a); *Belleza Fruit, Inc. v. Suffolk Banana Co.*, 2012 WL 2675066, at *8 (E.D.N.Y. July 5, 2012), the elements of a PACA claim are:(1) plaintiff is a PACA licensee; (2) **plaintiff sold perishable agricultural commodities;** (3) the buyer was subject to the trust provisions of PACA; (4) the perishable agricultural commodities traveled through interstate

commerce; (5) plaintiff preserved their PACA trust rights by providing requisite notice to the buyer; **and the buyer has not made full payment on at least some of the produce provided by plaintiff.** [Bolded provisions are the same provisions required to establish a breach of contract].

During the proceeding in this Court to determine the validity of the PACA Trust claims, the Defendants had the opportunity to present any defenses that they had to the Plaintiff's (and Other Plaintiffs') PACA Trust claim(s) and did so. Defendants P.K. Produce, Inc., Debra, and Sipasak filed their Objections on November 4, 2019 (Doc. No. 84), and Defendant Paul filed his separate Objection on November 4, 2019 (Doc. No. 85). Paul asserted no objections to Plaintiff's PACA Trust Claim, only objections to some of the Other Plaintiffs' PACA Trust Claims.

The defenses/objections asserted by the Defendants in Doc. No. 84 to the Plaintiff's PACA Trust claims in particular were that Plaintiff had failed "to submit a valid PACA License" and failed "to provide any inspection reports or documentation relating to any adjustments made to invoices or indicate that no such documents exist." Those objections were previously addressed by the Plaintiff in its Reply to Defendants P.K. Produce, Inc., Debra Kasapis, and Sipasak Properties, LLC's Objections to Plaintiffs' Joint Motion for Entry of an Order Determining Validity and Extent of PACA Trust Claims, filed by Plaintiff on November 13, 2019 (Doc. No. 88 and Doc. No. 88-1).

In making its ruling for the Plaintiff in its PACA Validity Order, this Court found and determined that none of the Defendants' defenses asserted in Doc. No. 84 had merit and rejected them all. This Court ruled that the Plaintiff had a valid PACA license at the time period at issue, based on Plaintiff's Reply filing at Doc. No. 88-1, at PageID# 834. *See* PACA Validity Order at 11. This Court also ruled that the allegation regarding the failure to supply inspection reports or documentation regarding adjustments had no validity, based on Plaintiff's filing that the four

9

invoices that were adjusted downward were adjusted prior to inclusion of amounts asserted in Plaintiff's PACA claim for adjudication, based on Plaintiff's Reply filing at Doc. No. 88, at p. 3-4. *See* PACA Validity Order at 17 and Ft. 8.

As such, the Court can take judicial notice of its prior findings of fact and conclusions of law in the PACA Validity Order relating to the elements of the Plaintiff's contract claims, which findings are both *stare decisis* and *res judicata*. This Court previously acknowledged that the same set of operative facts apply to both the Plaintiff's adjudicated PACA claim and the unadjudicated breach of contract claim and that they arise from the same alleged acts or omissions. Memorandum Opinion & Order filed July 5, 2022, Doc. No. 240 ("Rule 54 Order"), at page 14.

Additionally, pursuant to the provisions of Section 7(b) (7 U.S.C. §499g(b)) of PACA, the findings and orders set forth in the PACA Default Order attached to the Plaintiff's Complaint in this action as **Exhibit "2"** (Doc. No. 97-2) are required to be considered by this Court as prima-facie evidence of the facts stated therein. The PACA Default Order adopted all of the facts alleged by Plaintiff against P.K. Produce in its formal complaint filed with U.S. Secretary of Agriculture (the "PACA Complaint"), which is attached to the Plaintiff's Complaint in this action as **Exhibit "1"** (Doc. No. 97-1), including a determination that P.K. Produce breached its contracts with Plaintiff, by failing to pay any of the Invoices at issue in both the PACA Complaint and the Complaint in this action. The Plaintiff has concurrently filed a Request for Judicial Notice of the PACA Default Order and the PACA Default Order Letter.

Finally, the Plaintiff has supported its breach of contract claim with the testimony of David Rossi, President of R & R, submitted by Declaration ("Rossi Declaration"), who has attested to the terms of the contracts at issue which are set forth in the Invoices attached to the Complaint (and the

10

PACA Complaint), the breach of those contracts, the filing of the PACA Complaint and issuance of the Default Order, and the damages that Plaintiff suffered.

Accordingly, on this basis, this Court should rule that P. K. Produce, Inc. breached its contracts with the Plaintiff.

**B.      Damages to Be Awarded**

The Court's PACA Validity Order, at 25, ruled that the Plaintiff was entitled to the following amount on its perfected PACA trust claim: Principal of $131,983.35, plus accrued interest of $47,639.72, which totals $179,623.07 (with interest having only been calculated through June 30, 2019, at that point in time). This is the same amount that the Plaintiff is entitled to recover on its breach of contract claims against P.K. Produce, plus additional interest, attorneys' fees and costs.

On September 10, 2022, Plaintiff received $10,117.90 from the distribution to R & R Produce of IOLTA trust funds which was authorized by the Distribution Order. Plaintiff has now calculated the amount it will be owed as of the date of commencement of trial, September 19, 2022, after deduction of the $10,117.90 payment received on September 10, 2022, and including interest at the rate of 18% per annum through September 19, 2022.  The amount of interest accrued on the past due balance on the PACA Invoices from the date each Invoice was due thru September 19, 2022 is $94,332.75, for a total amount owed of $226,316.11 (without inclusion of attorneys' fees and costs). The daily rate of continued interest accrual is $60.10. The calculations made by the Plaintiff of the amount of interest owed are set forth in the Supplemental Declaration of David Rossi Regarding Interest Accrual filed concurrently herewith.

This Court previously found that Plaintiff is entitled to accrued interest at the express interest rate of 18% per annum set forth in its contracts with P.K. Produce (PACA Validity Order, at page

25). Accordingly, Plaintiff requests that interest be accrued on the total amount it is owed on its contracts from June 30, 2019, thru the date of judgment, at Plaintiff's contract rate of 18% per annum.

In addition, this Court previously recognized that Plaintiff is entitled to recover its attorneys' fees and costs under its contract terms with P. K. Produce, Inc., and that the claims for attorneys' fees and costs could be sought by subsequent petition to the court (PACA Validity Order, at page 25). The Plaintiff requests the opportunity to do so post trial, after its attorneys' fees and costs have been determined for the entire proceeding.

## 2. Enforcement of the PACA Statutory Trust Provisions against Paul for Breach of Fiduciary Duty/Nondischargeability (Doc. No. 97 at Counts IV and VIII).

### A. Legal Elements

#### (i) The Scope of the PACA Trust Relating to P.K. Produce

PACA provides for the formation of a statutory trust upon acceptance by the buyer of the commodities, stating as follows:

Perishable agricultural commodities received by a commission merchant, dealer, or broker in all transactions, and all inventories of food or other products derived from perishable agricultural commodities, and any receivables or proceeds from the sale of such commodities or products, shall be held by such commission merchant, dealer, or broker in trust for the benefit of all unpaid suppliers or sellers of such commodities or agents involved in the transaction, until full payment of the sums owing in connection with such transactions has been received by such unpaid suppliers, sellers, or agents.

7 U.S.C. § 499e(c)(2).

Produce buyers, as trustees of the statutory trust are required to maintain the trust and make full payment promptly to the trust beneficiaries, i.e., produce sellers who have perfected their PACA trust rights. See 7 U.S.C. §499b(4); 7 C.F.R. §46.46(d)(1).

The assets which are considered to be a part of the PACA trust, and which are not part of the

12

produce debtor's estate, are extensive. The PACA trust contains all inventories of food or other products derived from perishable commodities, and any receivables or proceeds from the sale of such commodities or products, which are to be preserved as a non-segregated floating trust, until full payment is made to the PACA creditors.  See 7 U.S.C. § 499e(c)(2) and 7 C.F.R. § 46.46(c).

Moreover, the establishment of this PACA trust occurs upon the commencement of the debtor's buying and selling of produce and exists continuously throughout the life of the debtor's business, until all PACA creditors are paid in full.  It does not matter whether the PACA trust beneficiary (here Plaintiff), or another produce seller, was the source of the inventory or proceeds; the PACA trust applies continuously to all inventories and proceeds. No tracing of assets is required.  *See In re Kornblum & Co., Inc.*, 81 F.3d 280, 286 (2nd Cir. 1995); *In re Atlantic Tropical Market Corp.*, 118 B.R. 139, 142 (Bankr. S.D. Fla 1990); *In re Milton Poulos, Inc.*, 947 F.2d 1351 (9th Cir. 1991); and *Frio Ice, S.A. v. Sunfruit, Inc.*, 918 F.2d 154, 156 (11th Cir. 1990).

Accordingly, in this case, the PACA trust for P.K. Produce commenced when P.K. sold its first order of produce at the Cleveland Terminal Market in April of 2017 and continued until P.K. Produce sold its last order of produce on or about October 31, 2018, and then collected the proceeds from the sale of all produce sold during the time period that P.K. Produce was a commission merchant.

Here, this Court has already ruled that Plaintiff has a valid and perfected PACA Trust claim in the PACA Validity Order. This Court also ruled that Plaintiff is entitled to enforce the statutory trust provisions of the PACA with respect to its PACA Trust claim pursuant to the PSJ Order, at page 14.

### (i)     The Obligations of Paul as a PACA Trustee for P.K. Produce

This Court has recognized that PACA trustees are obligated to "maintain trust assets in a manner that such assets are freely available to satisfy outstanding obligations to sellers of perishable

agricultural commodities." 7 C.F.R.§46.46(d)(1). PACA regulations further provide that "[a]ny act or omission which is inconsistent with this responsibility, including dissipation of trust assets, is unlawful." *Id.* "Dissipation" is defined as "any act or failure to act which could result in the diversion of trust assets or which could prejudice or impair the ability of unpaid suppliers, sellers, or agents to recover money owed in connection with produce transactions." 7 C.F.R. § 46.46(a)(2). *See also Coosemans Specialties, Inc. v. Gargiulo,* 485 F.3d 701, 706 (2nd Cir. 2007).

"A PACA trustee may use trust assets to pay ordinary business expenses as long as it does not do so at the expense of its PACA beneficiaries, or in any way impair the ability of the beneficiaries to collect money owed in connection with produce sales." *C.H. Robinson Co. v. Alanco*, 239 F.3d 483, 488 (2nd Cir. 2001) (citing Department of Agriculture Explanation of the Regulations under PACA, 49 F.R. 45735, 45738) (emphasis added). *See also Morris Okun, Inc. v. Harry Zimmerman, Inc.,* 814 F. Supp. 346, 348 (S.D.N.Y. 1993) ("We recognize at the outset that a PACA trust in effect imposes liability on a trustee, whether a corporation or a controlling person of that corporation, who uses the trust assets for any purpose other than repayment of the supplier. This includes use of the proceeds from the sale of perishables for legitimate business expenditures, such as the payment of rent, payroll, or utilities.")

"PACA liability attaches first to the licensed commission merchant, dealer, or broker of perishable agricultural commodities." *Golman-Hayden Co., Inc. v. Fresh Source Produce, Inc.*, 217 F.3d 348, 351 (5th Cir. 2000*). See also Iscavo Avocados USA, LLC v. Pryor*, 953 F.3d 316, 318 (5th Cir. 2020). If, however, the assets of the licensed commission merchant, dealer, or broker are insufficient to satisfy the PACA liability, then others may be held secondarily liable under certain circumstances.

14

As the Sixth Circuit has explained, "Every court of appeals to consider this issue has held that a corporate officer may be held personally liable under the Act (*citing, Coosemans Specialties, Inc.*, F.3d. at 705-706, collecting cases from the First, Second, Third, Fifth, Seventh, and Ninth Circuits). We now join them and hold that individual shareholders, officers, or directors of a corporation who are in a position to control statutory trust assets and who fail to preserve those assets, may be held personally liable under the Act." *Arava USA, Inc. v. Karni Family Farm, LLC,* 474 Fed. Appx. 452, 453 (6th Cir. 2012). *See also, Iscavo*, 953 F.3d at 318; *Bear Mountain Orchards, Inc. v. Mich-Kim, Inc.*, 623 F.3d 163, 170 (3rd Cir. 2010); *Coosemans Specialties, Inc.,* 485 F.3d at 705-706; *Sunkist Growers, Inc.*, 104 F.3d at 283.

Here, it is undisputed that P.K. Produce's assets are insufficient to satisfy its PACA liability to the Plaintiff.

Here, it is also undisputed that from April 1, 2017 thru June 19, 2018, Paul was the sole officer, director, and shareholder of P.K. Produce, Inc., solely controlled the trust assets during that time period, but failed to preserve those assets for the benefit of Plaintiff, a PACA creditor. Instead, Paul dissipated those assets by using them as a salary or draw for himself and/or for his wife Debra, by using the funds for personal purposes, or by using the funds to pay non-PACA business expenses.

Hence, based on this period of sole control of P.K. Produce by Paul from April 1, 2017 thru June 19, 2018, secondary liability for the P.K. Produce debt owed to Plaintiff can be imposed on Paul.  The undisputed evidence shows Paul's dissipation of PACA trust assets which should have been reserved to pay the PACA debt that ultimately was owed to Plaintiff.

Thereafter, it is undisputed that Paul technically relinquished his officer, director, and shareholder positions in P.K. Produce to his wife Debra on or about June 19, 2018, and that a few

15

days later Paul went to prison. However, during his time in prison, Paul remained listed on the P.K. Produce PACA license as the sole principal of P.K. Produce.  Thus, as a matter of public record Paul was still listed as the controlling person and as responsibly connected until the PACA license of P.K. Produce was terminated.

Plaintiff will also introduce evidence at trial from multiple witnesses that Paul continued to have the ability to exercise control over the PACA trust assets of P.K. Produce, Inc., together with his wife Debra and his good friend Heestand, while Paul was in prison. This is an additional basis to find that Paul is secondarily liable for the P.K. Produce debt owed to Plaintiff.

This Court has previously recognized that there are multiple approaches for evaluating who is in a position to control PACA trust assets which have been taken by different courts of appeal. (*See* PSJ Order at 46-49 and Ftn. 20. One approach is the one that the Fifth Circuit used in *Iscavo Avocados USA v. Pryor*, 953 F.3d 316, 319 (5th Cir. 2020) wherein all that is necessary is to show that the person at issue had the ability to control the PACA trust assets.

Herein, the testimony of both Debra and Heestand is that they took specific directions from Paul as to how to manage and operate the business of P.K. Produce while Paul was in prison. Moreover, they consulted with Paul as to all major decisions that were made.  Although Paul was no longer writing the checks, because he was not legally allowed to do so while he was in prison, he set-up the protocols for how the PACA funds would be handled and had the ability at any time to change those protocols in order to assure that the PACA creditors, including Plaintiff, were paid.  Yet he failed to do so.

Moreover, although Paul was informed by Debra, and consulted by Debra, when she decided to shut-down P.K. Produce, Paul failed to provide Debra or Heestand with any instructions regarding

16

the preservation of PACA trust assets so that the PACA trust creditors, such as Plaintiff, could be paid.  Instead, he took no action whatsoever to preserve the PACA trust assets when P.K. Produce shut down, both while he was in prison and after he got out of prison.

This Court has also recognized that the Third Circuit uses an alternate test to determine personal liability under PACA, pursuant to the case of *Bear Mountain Orchards, Inc. v. Mich-Kim, Inc.,* 623 F. 3d 163, 170 (3rd Cir. 2010), which is as follows:

Taken together, these cases suggest a test (whether ascribed as "position of control" or otherwise) that takes into account formal position(s) but relies primarily on context. It calls on courts to: 1) determine whether an individual holds a position that suggests a possible fiduciary duty to preserve the PACA trust assets (e.g., officer, director, and/or controlling shareholder); and 2) assess whether that individual's involvement with the corporation establishes that she was actually able to control the PACA trust assets at issue. [footnote omitted]. The ability to control is core. A formal title alone is insufficient—especially when faced with a small, "mom and pop" corporation such as Fleisher Produce, where formalities may be less meaningful.

Paul also can be found to be individually liable for the PACA debts of P.K. Produce, Inc. under the *Bear Mountain* standards.  P.K. Produce was clearly a "pop" corporation, operated solely by Paul without any corporate formalities, or formal corporate or financial record keeping, until June 19, 2018.  At that juncture, Paul relinquished technical title to the P.K. Produce stock, but not control over its operations.

Paul put his wife Debra and his best friend Heestand in charge of P.K. Produce and told them how to operate P.K. Produce.  They then did so, without putting any safeguards in place to protect the PACA creditors. Instead, Debra and Paul continued to dissipate PACA trust assets in the same manner as Paul had done prior to his going to prison.  Here, Paul is just as responsible as Debra for the failure of P.K. Produce to pay its PACA debts. Here, Paul dissipated the PACA assets before he transferred title to his stock to his wife Debra, and then left the protocols in place for both Debra and Heestand to continue to dissipate PACA trust assets.  At the same time, Paul counseled them and

17

advised them as to how to operate the business, while failing to ask them to preserve the PACA trust assets for the benefit of the creditors.

### B.    Damages to be Awarded

Paul is secondarily liable for the P.K. Produce debt owed to Plaintiff of $225,835.32, plus additional accrued interest to the date of Judgment at the rate of $60.10 per day, and plus attorneys' fees and costs to be determined after judgment.  Debra also remains secondarily liable, as previously determined by this Court.

### 3.    Unlawful Retention of PACA Trust Assets/Disgorgement against Paul, Debra, and the Trust (Doc. No. 97 at Counts IV and VIII).

### A.    Legal Elements

This Court has recognized that "when trust assets are held by a third party, resulting in the failure of the trustee to pay unpaid sellers of perishable agricultural commodities, the third party may be required to disgorge the trust assets unless the third party can establish that it has some defense, such as having taken the assets as a bona fide purchaser[.]" *Nickey Gregory Company LLC v. AgriCap LLC*, 597 F.3d 591, 595-96 (4th Cir. 2010). *See also Meuers Law Firm, P.L. v. Reasor's LLC*, 796 Fed. Appx. 472, 482 (10th Cir. 2019).

At trial, Plaintiff will produce evidence that Paul and Debra are jointly and severally liable under PACA for the amount of up to $70,271 of PACA trust funds from P.K. Produce that were deposited on or about December 14, 2018 into their joint bank account after P.K. Produce shut down its business.  This money must be disgorged by Paul and Debra.

At trial, Plaintiffs will produce evidence that Paul and Debra are liable for additional disgorgement based on bank records showing that they received additional cash from P.K. Produce during the time period that P.K. Produce was a commission merchant, which evidence wasn't

18

previously presented to this Court at the time a partial summary judgment was obtained for disgorgement relating to these two Defendants. In total, Paul Kasapis received an additional amount of $21,954.90 in PACA trust assets during the period of August 11, 2017 thru May 11, 2018, while Debra received an additional amount of $4,665.00 in PACA trust assets during the period of August 21, 2017 thru January 7, 2018. This money must be disgorged by Paul and Debra.

At trial, Plaintiffs will produce evidence that The Kasapis Family Irrevocable Intervivos Trust Dated April 6, 2003, with Kathy S. Bushway as Trustee (the "Kasapis Trust"), received cash deposits from P.K. Produce in the total amount of $8,000, and that P.K. Produce paid expenses for the Kasapis Trust in the total amount of $514.10. This money must be disgorged by the Kasapis Trust.

**B.    Damages to be Awarded**

Plaintiffs will request a ruling of disgorgement of trust assets shown at trial to have been transferred to Paul and Debra jointly, and/or separately, and/or shown to have been transferred to the Trust.

<u>**WITNESSES PLAINTIFF WILL CALL AT TRIAL**</u>

- **Jeffrey W. Heestand** *(by personal testimony)*: Paul's business practices and exercise of control over P.K. Produce; Dissipation of P.K. Produce's trust assets, and failure to preserve PACA trust assets for creditors; Procedures followed in shutting down the business operations of P.K. Produce, and distribution of PACA trust assets to non-PACA creditors.

- **Debra Kasapis** *(by personal testimony)*: Paul's business practices and exercise of control over P.K. Produce; Dissipation of P.K. Produce's trust assets, and failure to preserve PACA trust assets for creditors; Procedures followed in shutting down the business operations of

P.K. Produce, and distribution of PACA trust assets; Confirmation of receipt of funds to be disgorged or delivery of funds to be disgorged.

- **Paul G.A. Kasapis** *(by personal testimony)*: Paul's business practices and exercise of control over P.K. Produce; Dissipation of P.K. Produce's trust assets, and failure to preserve PACA trust assets for creditors. Procedures followed in shutting down the business operations of P.K. Produce, and distribution of PACA trust assets to non-PACA creditors; Confirmation of receipt of funds to be disgorged, or delivery of funds to be disgorged.

- **Paul J. M. Kasapis** *(by personal testimony)*: Procedures followed in shutting down the business operations of P.K. Produce and distribution of PACA trust assets to non-PACA creditors.

- **Brett Patalita** *(by personal testimony)*: Paul's business practices and exercise of control over P.K. Produce; Dissipation of P.K. Produce's trust assets, and failure to preserve PACA trust assets for creditors.

- **Daniel Patalita** *(by deposition transcript, as an unavailable witness pursuant to Court Order)* Paul's business practices and exercise of control over P.K. Produce; Dissipation of P.K. Produce's trust assets, and failure to preserve PACA trust assets for creditors.

- **Kathy S. Bushway aka Kathy Kasapis** (Trustee of the Kasapis Family Irrevocable Trust dated April 6, 2020) *(by personal testimony)*: Confirmation of receipt of funds to be disgorged.

- **David Rossi** *(by declaration, pursuant to Court Order)*: Establishment of the Plaintiff's breach of contract claim and PACA claim, and damages suffered.

- **Notarized Affidavit of Custodian of Records of Citizens Bank** *(by notarized affidavit of qualified person, Fed. R. Evid. 803(6)(A)-(C) and 902(8), (11),(13))*: Bank records to establish secondary liability, dissipation of PACA assets, and/or disgorgement claims.

- **Affidavits of Custodian of Records of KeyBank** *(by affidavits of qualified person, Fed. R. Evid. 803(6)(A)-(C) and 902(8), (11),(13))*: Bank records to establish secondary liability, dissipation of PACA assets, and/or disgorgement claims.

- **Notarized Affidavit of Custodian of Records, Certificates of Records from National Subpoena Processing of JPMorganChase and Testimony by Chase Custodian of Record** *(by notarized affidavit of qualified persons/by certification by qualified persons, Fed. R. Evid. 803(6)(A)-(C) and 902(8), (11),(13,) and/or by personal testimony of custodian of records)*: Bank records to establish secondary liability, dissipation of PACA assets, and/or disgorgement claims.

- **Notarized Affidavit of Custodian of Records of OnPay, Inc. and/or Testimony by President and COO of OnPay, Inc.** *(by affidavit of qualified person, Fed. R. Evid. 803(6)(A)-(C) and 902(8), (11),(13) and/or by personal testimony of custodian of records)*. Payroll records to establish dissipation of PACA assets.

## **INDEX OF EXHIBITS**

The Index of Exhibits will be filed separately, as a joint document with the counsel for all parties in this litigation.

## **EVIDENTIARY ISSUES LIKELY TO ARISE AT TRIAL**

Plaintiff does not currently anticipate that there will be any evidentiary issues, or if there are any, that they will be minimal.

The exhibits to be introduced by Plaintiff as evidence at trial will either be government records, subpoenaed business records or verified discovery responses by the parties (or demonstrative exhibits incorporating the aforedescribed records).

Concurrently herewith the Plaintiff is filing a Request for Judicial Notice of government records.

In addition, the parties have agreed to use the color-coded deposition transcript and exhibits of an unavailable witness, Daniel Patalita, who is deceased.

Plaintiff is submitting the Declaration of Plaintiff as direct testimony, as previously authorized by this Court in the Final Pretrial Conference Order, at 3-4.  The Plaintiff is also submitting a Supplemental Declaration of Plaintiff with respect to accrued interest.

## ESTIMATE OF THE LENGTH OF TRIAL

Plaintiff anticipates trial to take between 3-5 days.

Plaintiff had sought to expedite trial through the use of deposition testimony as initial direct evidence subject to cross-examination, but counsel for the Defendants, have refused to so stipulate.

Plaintiff also sought to obtain a stipulation of facts, but Defendants did not agree to do so, other than to recognize that P.K. Produce, Inc. has not paid Plaintiff for the Produce that was the subject of the PACA Invoices attached to the Plaintiff's Complaint.  This is a finding that was already made by this Court.

## PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

### A.  FINDINGS OF FACT

### 1.      Breach of Contract (Doc. No. 97 at Count 1)

The Court finds:

i) From August 2018 through October 2018, R & R sold perishable agricultural commodities (the "Produce") to P.K. Produce, Inc. ("P.K. Produce"). P.K. Produce failed to remit payment for the Produce on the following eight (8) listed invoices: Invoice No. 34595 in the amount of $12,315.00, Invoice No. 34599 in the amount of $15,587.20, Invoice No. 34602 in the amount of $16,050.00, Invoice No. 34606 in the amount of $16,084.05, Invoice No. 34613 in the amount of $16,280.00, Invoice No. 34619 in the amount of $20,825.10, Invoice No. 34624 in the amount of $15,911.50, Invoice No. 34629 in the amount of $18,930.50 (collectively, the "PACA Invoices"), for a total amount of $131,983.35, which PACA Invoices are attached to the Complaint as part of **Exhibit "1"**.

ii) That pursuant to the terms of the agreements set forth in said PACA Invoices the Plaintiff has performed the terms of said agreements, supplying produce as contemplated by the parties.

iii) That all of the PACA Invoices provided that the Produce was sold to P. K. Produce subject to the provisions of the statutory trust authorized by the Perishable Agricultural Commodities Act ("PACA"), that interest would accrue on any past due account balance at the rate of 1.5% per month (18% per annum); and for the recovery of attorneys' fees and costs incurred if a collection action became necessary.

iv) That P.K. Produce breached the PACA Invoices by failing to pay the Plaintiff for the amounts due and owing under the PACA Invoices for the Produce.

v) That as a direct and proximate result of the failure to pay Plaintiff for the amounts due pursuant to the PACA Invoices, the Plaintiff has suffered damages in the total amount of $131,983.35, less the amount of $131,983.35 distributed to Plaintiff on September 10, 2022 from

IOLTA trust funds, plus interest at the rate of 18% per annum through September 19, 2022. The amount of interest accrued on the past due balance on the PACA Invoices from the date each Invoice was due thru September 19, 2022 is $94,332.75, for a total amount owed of $226,316.11 (without inclusion of attorneys' fees and costs). The daily rate of continued interest accrual is $60.10 until the date of judgment.

vi) That the Plaintiff is also entitled to an award of attorneys' fees and costs to be determined according to proof after judgment is entered.

## 2. Breach of Fiduciary Duty/NonDischargeability (Doc. No. 97 at Counts IV and VIII)

The Court finds:

i) From on or about April 1, 2017 until June 19, 2018, Paul Kasapis ("Paul") was the President and sole shareholder of P.K. Produce, and there were no other officers or directors of P.K. Produce;

ii) On or about April 1, 2017, Paul decided that P.K. Produce would engage in the business of buying and selling produce from a newly established place of business located at the Cleveland Terminal Market;

iii) At the time that P.K. Produce, Inc. commenced doing business at the Cleveland Terminal Market it was licensed as a commission merchant by the U.S.D.A. PACA Branch with Paul listed as the sole owner, officer and director;

iv) From on or about April 1, 2017 until June 19, 2018, Paul had complete control over the disposition of P.K. Produce's proceeds from the sales of perishable agricultural commodities;

v) From on or about April 1, 2017 until June 19, 2018, Paul had all policy and

24

decision making authority for P.K. Produce;

vi)     From on or about April 1, 2017 until he went to prison on June 28, 2018 Paul worked full time for P.K. Produce;

vii)     P.K. Produce never prepared a balance sheet or profit and loss statement from April 1, 2017 until it ceased to operate.

viii)     P.K. Produce never prepared a general ledger from April 1, 2017 until it ceased to operate.

ix)     P.K. Produce never prepared a list of assets from April 1, 2017 until it ceased to operate.

x)     P.K. Produce never filed federal or state income tax returns in 2017, 2018 or 2019.

xi)     From on or about April 1, 2017 until June 19, 2018 P.K. Produce never had any corporate meetings or prepared corporate minutes.

xii)     From on or about April 1, 2017 until June 19, 2018 P.K. Produce paid some of its ordinary business expenses (non-PACA debts) in cash it received from the sale of produce, and paid other ordinary business expenses by check from its bank accounts where the proceeds of sale of produce were deposited.   None of these ordinary business expenses were payments to PACA creditors.

xiii)     From on or about April 1, 2017 until June 19, 2018 Paul reimbursed himself for expenses he paid to run the business of P.K. Produce, and paid salaries or draws to himself and Debra from PACA monies derived from the sale of produce.  Paul also paid personal expenses for himself, for Debra and/or for his family using PACA trust funds.

xiv)     From on or about April 1, 2017 until June 19, 2018 accounts payable were not entered into the accounting software program used by P.K. Produce. The produce vendor invoices were provided to Paul Kasapis for review and payment and then brought back to the office when the invoices had been paid.

xv)     On or about June 19, 2018, on the advice of legal counsel, Paul resigned as President of P.K. Produce and transferred his shares in P.K. Produce to his wife Debra Kasapis ("Debra") because Paul had been convicted of federal felony charges.  Due to such federal felony conviction, P.K. Produce could no longer maintain a bank account if Paul continued to own P.K. Produce or was an officer or director of P.K. Produce. Debra paid no consideration for the transfer of shares in P.K. Produce, and had no experience in the produce industry prior to obtaining her shares in P.K. Produce.

xvi)     After Paul resigned as President of P.K. Produce and transferred his shares in P.K. Produce to Debra, Paul took no action to inform the U.S.D.A. PACA Branch of the change in control of P.K. Produce.

xvii)     Paul went to prison on June 28, 2018 and did not get out of prison until after P.K. Produce shut down its operations at the Cleveland Terminal Market on or about October 31, 2018.

xviii)     At the time that Paul Kasapis went to prison on June 28, 2018, he intended to come back and operate P.K. Produce once he finished his prison sentence.

xix)     Prior to going to prison, Paul Kasapis asked his close friend Jeffery Heestand to maintain the business of P.K. Produce and to keep it going while Paul was in prison.

xx)     Prior to going to prison, Paul Kasapis spent two or three days training Jeffery

26

Heestand about the business of P.K. Produce and made a list on a notebook of what Jeffery Heestand should do to operate P.K. Produce.

xxi)    While he was in prison, Paul Kasapis communicated with both Jeffery Heestand and his wife Debra Kasapis thru emails and telephone calls. Jeffery Heestand also visited Paul Kasapis in prison on one occasion.

xxii)    While Paul was in prison, Debra consulted with Paul and obtained his guidance on all major decisions she made with respect to P.K. Produce, including her decision to shut-down P.K. Produce on or about October 31, 2018.

xxiii)    While Paul was in prison, Heestand and Debra were the only persons who were authorized to disburse funds from the bank account of P.K. Produce.

xxiv)    While Paul was in prison, Paul was in a position to control the PACA trust assets of P.K. Produce because he directed and advised both Debra and Heestand as to the operations of the business of P.K. Produce.

xxv)    While Paul was in prison, P.K. Produce engaged in the same business practices it had engaged in prior to Paul going to prison.  P.K. Produce paid some of its ordinary business expenses in cash it received from the sale of produce and paid other ordinary business expenses by check from its bank accounts where the proceeds of the sale of produce were deposited. P.K. Produce disbursed monies to Paul and Debra from the proceeds of the sale of produce either for salaries, reimbursement of business expenses or for payment of personal expenses. All of these payments and disbursements constitute the dissipation of PACA trust assets.

After After P.K. Produce ceased its operations on October 31, 2018, it had insufficient monies available to pay its produce creditors, including Plaintiff, and yet disbursed funds to its principals, Debra and Paul.

xxvi)   That the PACA statutory trust for P.K. Produce began in April 2017 and continued until P.K. Produce made its last sale of produce on or about October 31, 2018, and then collected the proceeds from the sale of such produce.

xxvii)  That Plaintiff has performed and fulfilled all duties required by the PACA trust provisions to preserve its PACA trust benefits, including, without limitation, obtaining the PACA Judgment for the amounts owed pursuant to the PACA Invoices, and, as a result, Plaintiff has perfected its interest as a statutory trust beneficiary in the PACA trust assets formerly held by P.K. Produce.

xxviii) That during the period of April 1, 2017 thru June 19, 2019, when Paul was solely in control of P.K. Produce, Paul improperly dissipated Plaintiff's interest in the PACA trust assets by using those assets for purposes other than paying PACA trust creditors, in violation of his statutory duties to preserve the trust assets for the benefit of Plaintiff.

xxix)   That after June 19, 2019, Paul continued to have the ability to control the PACA trust assets of P.K. Produce, but failed to take any actions to maintain the trust assets for the benefit of the PACA creditors, including Plaintiff, but instead diverted the PACA trust assets, or allowed the PACA trust assets to be diverted, so that they were unavailable to pay Plaintiff the amount for its PACA claim.

xxx)    That as a result, Plaintiff is entitled to an award of damages against Paul, who is secondarily liable for the amounts owed by P.K. Produce to Plaintiff, in the total amount of

$131,983.35, less the amount of $131,983.35 distributed to Plaintiff on September 10, 2022 from IOLTA trust funds, plus interest at the rate of 18% per annum through September 19, 2022.  The amount of interest accrued on the past due balance on the PACA Invoices from the date each Invoice was due thru September 19, 2022 is $94,332.75, for a total amount owed of $226,316.11 (without inclusion of attorneys' fees and costs). The daily rate of continued interest accrual is $60.10 until the date of judgment.

xxxi) That the Plaintiff is also entitled to an award of attorneys' fees and costs against Paul to be determined according to proof after judgment is entered.

**3.      Disgorgement (Doc. No. 97 at Counts IV and VIII)**

The Court finds:

i) That the PACA statutory trust for P.K. Produce began in April 2017 and continued until P.K. Produce made its last sale of produce on or about October 31, 2018, and then collected the proceeds from the sale of such produce.

ii) That during the period of August 21, 2017 thru January 7, 2018 Paul improperly dissipated and diverted PACA trust assets to Debra by issuing checks made payable to Debra in the total amount of $4,665.00, in violation of his statutory duties to preserve the trust assets of P.K. Produce for the benefit of Plaintiff.

iii) That during the period of August 11, 2017 thru May 11, 2018 Paul improperly dissipated and diverted PACA trust assets to Paul by withdrawing PACA trust funds or issuing a check made payable to Paul in the total amount of $21,954.90, in violation of his statutory duties to preserve the trust assets of P.K. Produce for the benefit of Plaintiff.

iv)That during the period of August 4, 2017 thru July 5, 2018 Paul improperly dissipated and diverted PACA trust assets to The Kasapis Family Irrevocable Intervivos Trust (the "Kasapis Trust") in the total amount of $8,514.10, in violation of his statutory duties to preserve the trust assets of P.K. Produce for the benefit of Plaintiff.

v)That on or about December 14, 2018, Debra improperly dissipated and diverted PACA trust assets into the joint bank account of Debra and Paul in the total amount of $70,271, and that one or both of them received and used these funds for their own benefit, in violation of her statutory duties to preserve the trust assets of P.K. Produce for the benefit of Plaintiff.

vi)That the Plaintiff is entitled to an award of damages against Debra in the amount of $4,665.00 for disgorgement of the PACA trust assets.

vii) That the Plaintiff is entitled to an award of damages against Paul in the amount of $21,954.90 for disgorgement of the PACA trust assets.

viii)That the Plaintiff is entitled to an award of damages against the Kasapis Trust in the amount of $8,514.10 for disgorgement of the PACA trust assets.

ix)That the Plaintiff is entitled to an award of damages against Paul and Debra, jointly and severally, for the amount of $70,271 for disgorgement of the PACA trust assets.

## B.  CONCLUSIONS OF LAW

### 1.  Breach of Contract (Doc. No. 97 at Count 1)

To prove a breach of contract under Ohio law, the following elements must be established: 1) the existence of a valid contract; 2) performance by the plaintiff; 3) breach by the defendant; and 4) damage or loss to the plaintiff. *See Samadder v. DMF of Ohio, Inc.,* 154 Ohio App.3d 770, 778, 798

N.E.2d 1141 (2003); *Doner v. Snapp,* 98 Ohio App.3d 597, 600, 649 N.E.2d 42 (1994); *Thomas v. Publishers Clearing House, Inc.,* 29 Fed. Appx. 319, 322 (6th Cir. 2002).

Here all of the elements for breach of contract have been established.  The PACA Invoices establish a valid contract, the delivery of the Produce by Plaintiff to P.K. Produce establishes the performance of the contract by Plaintiff, the failure to pay for the Produce by P.K. Produce establishes the breach by P.K. Produce, and the damages suffered by the Plaintiff are the PACA Invoice amounts, plus the interest rate of 18% per annum established by the PACA Invoices, plus Plaintiff's attorneys' fees and costs incurred for collection of the amounts due, as established by the PACA Invoices.

## 2. Breach of Fiduciary Duty/NonDischargeability (Doc. No. 97 at Counts IV and VIII)

PACA establishes a statutory trust for the benefit of sellers and suppliers.  This trust arises from the moment perishable goods are delivered by the seller.  An individual who is in the position to control the trust assets and who does not preserve them for the beneficiaries has breached a fiduciary duty and is personally liable for that tortious act.  *Morris Okun, Inc. v. Harry Zimmerman, Inc.*, 814 F. Supp. 346, 348 (S.D.N.Y. 1993).

Perishable agricultural commodities received by a commission merchant, dealer, or broker in all transactions, and all inventories of food or other products derived from perishable agricultural commodities, and any receivables or proceeds from the sale of such commodities or products, shall be held by such commission merchant, dealer, or broker in trust for the benefit of all unpaid suppliers or sellers of such commodities or agents involved in the transaction, until full payment of the sums owing in connection with such transactions has been received by such unpaid suppliers, sellers or agents.  7 U.S.C.S §499e(c) (2).

31

The trust res includes all agricultural commodities supplied to the merchant, dealer or broker and the proceeds thereof regardless of whether these assets have been segregated. *In re Southland + Keystone*, 132 B. R. 632, 639 (9th Cir. 1991).  Section 499e(c) (2) provides that commodities, products derived from commodities and receivables derived from commodities "in all transactions" are subject to the PACA trust.  *Id.*  (emphasis added).  The establishment of this PACA statutory trust occurs upon the commencement of the debtor's buying and selling of produce, and exists continuously throughout the life of the debtor's business, until all PACA creditors are paid in full.  It does not matter whether the PACA trust beneficiary, or another produce seller, was the source of the inventory or proceeds; the PACA trust applies continuously to all inventories and proceeds. No tracing of assets is required.  *See In re Kornblum & Co., Inc.*, 81 F.3d 280, 286 (2nd Cir. 1995); *In re Atlantic Tropical Market Corp.,* 118 B.R. 139, 142 (Bankr. S.D. Fla 1990); *In re Milton Poulos, Inc.,* 947 F.2d 1351 (9th Cir. 1991); and *Frio Ice, S.A. v. Sunfruit, Inc.,* 918 F.2d 154, 156 (11th Cir. 1990).

The beneficiary of a PACA trust is entitled to priority as to all PACA trust assets, ahead of administrative expenses, claims for attorneys' fees, and all claims of creditors, including those with valid security interests.  *See In re Super Spud*, 77 B.R. 930, 932 (Bankr. M.D. Fla 1987); *Tom Lange Co. v. Lombardo Fruit & Produce Co.*, 12 F. 3d 806, 809 (8th Cir. 1993); and *In Re San Joaquin Food Serv., Inc.*, 958 F.2d 938, 939 (9th Cir. 1992).  A PACA trustee may use trust assets to pay ordinary business expenses as long as it does not do so at the expense of its PACA beneficiaries, or in any way impair the ability of the beneficiaries to collect money owed in connection with produce sales.  *C.H. Robinson v. Alanco Corp.*, 239 F.3d 483, 488 (2nd Cir. 2001).  The use of PACA trust funds for such items as salary and loan payments constitutes a dissipation of PACA trust funds and a

32

breach of fiduciary duties as trustee. *Id. See also Mid-Valley Produce Corp. v. 4-XXX Produce Corp.,* 819 F. Supp. 209, 212 (E.D.N.Y. 1995).

Liability under PACA requires only that trust assets be used for some purpose other than repayment to the seller. This includes use of the proceeds from the sale of perishables for legitimate business expenditures, such as the payment of rent, payroll or utilities. *Weis-Buy Services, Inc. v. Brigiotta's Produce & Garden Center*, 307 F. Supp. 2d 682 (W.D. Pa. 2004). If a debtor uses PACA trust assets to acquire or make payments on another asset (such as real estate or equipment), without maintenance of a reserve sufficient to satisfy all unpaid PACA creditors, such an action constitutes an unlawful dissipation of PACA trust assets, and the acquired asset then also becomes a part of the PACA trust. *See In re Al Nagelberg & Co*., 84 B.R. 19 (Bankr. S.D. N.Y. 1988). The courts have also recognized that since "it is usually impossible for a PACA seller to trace the origin of disputed assets...the burden of tracing the source of funds [is] on the purchaser of agricultural commodities subject to PACA." *Tony Vitrano Co. v. National Produce Co., Inc.*, 815 F. Supp. 23, 25 (D.C. 1993).

In sum, a PACA trust in effect imposes liability on a trustee who uses the trust assets for any purpose other than repayment of the supplier. *Mid-Valley Produce Corp. v. 4-XXX Produce Corp.,* 819 F. Supp. 209, 212 (E.D.N.Y. 1995).

Here, the evidence shows that Paul repeatedly used PACA trust assets for many purposes other than repayment to PACA trust creditors when he was solely in control of the PACA trust assets before June 19, 2019. This activity alone makes Paul secondarily liable for the debts owed to Plaintiff.

33

In addition, after Paul went to prison, he remained in a position to control the PACA trust assets yet allowed them to be used for purposes other than repayment of the PACA produce sellers, including the Plaintiff. Such actions also make Paul secondarily liable for the amounts owed to Plaintiff on it PACA trust claim.

### 3. <u>Disgorgement (Doc. No. 97 at Counts IV and VIII)</u>

This Court previously recognized that a party who receives PACA trust funds who is not a bona fide purchaser for value may be required to disgorge trust assets, *citing Nickey Gregory Company LLC v. AgriCap LLC,* 597 F.3d 591, 595-596 (4th Cir 2010), and *Meurs Law Firm, P.L. v. Reasor's LLC*, 796 Fed. Appx. 472, 482 (10th Cir. 2019) (PSJ Order, at 17). Only a bona fide purchaser for value without notice of the breach of trust may keep trust funds so transferred. *See Consumers Produce Co., Inc. v. Volante Wholesale Produce, Inc.,* 16 F.3d 1374, 1380 (3rd Cir. 1984).

The evidence will show that no value was given by either Debra, Paul or the Kasapis Trust for the PACA trust funds they received from P.K. Produce. Hence, disgorgement should be ordered by this Court.

Dated: September 12, 2022.                     Respectfully submitted,

/s/ *Effie F. Anastassiou*
Effie F. Anastassiou—Pro Hac Vice
ANASTASSIOU & ASSOCIATES
242 Capitol St.
Post Office Box 2210
Salinas, California 93902
Telephone: (831) 754-2501
Facsimile: (831) 754-0621
Email: EffieEsq@SalinasAgLaw.com

Attorney for Plaintiff R&R Ag Consulting, Inc.
(formerly known as R & R Produce, Inc.)

34

## **CERTIFICATE OF SERVICE**

A copy of the foregoing Plaintiff's Trial Brief was electronically filed and served to all

counsel of record through the Court's ECF system this 12th day of September 2022.

/s/ *Effie F. Anastassiou*

Attorney for Plaintiff R&R Ag Consulting,
Inc. (formerly known as R & R Produce,
Inc.)

F:\RNR\PACA Claim against PK Produce\Trial\Pre-Trial Conference\Pretrial Brief for Pretrial Conference.doc

35