# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| **GREAT LAKES PACKERS, INC.,** *et al.,* | **Consolidated Case No. 1:18-CV-02754-PAB** |
| **Plaintiffs,** | |
| **vs.** | **JUDGE PAMELA A. BARKER** |
| **P.K. PRODUCE, INC.,** *et al.,* | |
| **Defendants.** | |

## MEMORANDUM IN SUPPORT OF APPLICATION FOR AWARDS OF ATTORNEYS' FEES AND COSTS; FOR SEPARATE AWARD OF ONLY TAXABLE COSTS; AND FOR AWARDS OF INTEREST

# **TABLE OF CONTENTS**

I. FACTUAL AND PROCEDURAL HISTORY ...................................................... 1

II. REASONABLE ATTORNEY'S FEES AND COSTS INCURRED IN
CONNECTION WITH THE LITIGATION OF THIS CASE HAVE BEEN
ESTABLISHED BY DECLARATIONS AND OTHER SUPPORTING
DOCUMENTS ......................................................................................... 8

   A. The Number of Hours Expended on This Case by Anastassiou & Associates
Were Reasonable to Achieve the Results Obtained—Prevailing on the Merits on
Plaintiff's PACA Claims Against the Named Defendants ..................................... 9

   B. Anastassiou & Associates Billed at Reasonable Hourly Rates Which Were at the
Prevailing Rates in the Local Community ............................................................ 14

   C. The Billing Rates Charged by Anastassiou & Associates Were Less Than the
Reasonable Hourly Rates in Ohio Based on the *Laffey Matrix*, as Adjusted for
Cost-of-Living Differentials .................................................................................. 16

   D. The Costs Incurred by Plaintiff Were Necessary to Prosecute This Matter and
are Supported by Documentation ......................................................................... 19

   E. The Attorneys' Fees and Costs Incurred Should be Apportioned Among the
Defendants Based on Their Proportionate Liability for the Principal Amount of
Plaintiff's Damages .............................................................................................. 20

   F. The Taxable Costs Incurred Should be Apportioned to the Argie Defendants
Based on Their Proportionate Liability for the Principal Amount of Plaintiff's
Damages ............................................................................................................... 22

III. INTEREST SHOULD BE AWARDED AGAINST EACH OF THE
DEFENDANTS BASED ON THE PLAINTIFF'S CONTRACT  RATE OF 18%
PER ANNUM ....................................................................................... 23

IV. CONCLUSION--TOTAL AMOUNT OF JUDGMENTS TO BE AWARDED
AGAINST EACH OF THE DEFENDANTS HAS BEEN CALCULATED ............ 27

# TABLE OF AUTHORITIES

**Cases**

*Adcock-Ladd v. Secretary of Treasury,* 227 F.3d 343 (6th Cir. 2000) .................. 8, 17

*Blum v. Stenson*, 465 U.S. 886 (1984) ........................................................ 14

*Chapman v. Tristar Prods.*, 2018 U.S. Dist. LEXIS 133555 (N.D. Ohio
Aug. 3, 2018) ........................................................................................ 17

*City of Burlington v. Dague,* 505 U.S. 557 (1992) ......................................... 8

*Davis v. Mut. Life Ins. Co.*, 1990 U.S. Dist. LEXIS 21116 (S.D. Ohio Aug.
9, 1990) ................................................................................................ 21

*Déjà vu of Nashville v. Metro. Gov't of Nashville and Davidson County*,
421 F.3d 417 (6th Cir. 2005) ................................................................ 14

*DiLaura v. Twp. Of Ann Arbor*, 471 F.3d 666 (6th Cir. 2006). ...................... 14

*Dobina v. Carruthers*, 2010 U.S. Dist. LEXIS 43958 (N.D. Ohio May 3,
2010) .............................................................................................. 14, 17

*Dowling v. Litton Loan Servicing LP*, 320 Fed. Appx. 442 (6th Cir. 2009)............. 14

*Gallo v. Moen, Inc.*, 2014 U.S. Dist. LEXIS 128032 (N.D. Ohio Sept. 11,
2014) .................................................................................................... 17

*Harmon v. McGinnis, Inc.,* 263 Fed. Appx. 465 (6th Cir. 2008) ........................ 16, 17

*Hensley v. Eckerhart*, 461 U.S. 424 (1983)...................................................... 8

*Imwalle v. Reliance Medical Products, Inc.*, 515 F.3d 531 (6th Cir. 2008) ......... 13, 14

*In re HPL Techs., Inc., Secs. Litig.*, 366 F. Supp. 2d 912 (N.D. CA 2005)............. 18

*In re Sonic Corp. Customer Data SEC Breach Litig. Fin. Institutions*, 2022
U.S. Dist. LEXIS 189402 (N.D. Ohio, October 17, 2022) .................... 17

*Kendall Holdings, Ltd v. Eden Cryogenics LLC*, 2014 U.S. Dist. LEXIS
146816 (S.D. Ohio March 4, 2014)........................................................ 21

*L & M Companies, Inc. v. Lakeside Produce, Inc.,* 2006 U.S. Dist. LEXIS
106822 (E.D. Ky. March 20, 2006........................................................ 26

*La Grasso Bros., Inc. v. Am. Foodservice, L.L.C.,* 2011 U.S. Dist. LEXIS
25213 (E.D. Mich. March 11, 2011)..................................................... 26

*Laffey v. Northwest Airlines, Inc.*, 746 F.2d 4 (D.C. Cir. 1984) .............................. 17

*Marr v. Rife*, 545 F.2d 554 (6th Cir. 1976) ................................................ 21

*Riggins v. Hunt*, 2007 U.S. Dist. LEXIS 8879 (S.D. Ohio Feb. 5, 2007) ................ 21

*Theme Promotions, Inc. v. News Am. Mktg. FSI, Inc.*, 731 F. Supp. 2d 937
(N.D. CA 2010)...................................................................................... 18

**Statutes**

28 U.S.C. § 1920 .................................................................................. 1, 22

7 U.S.C. § 499b ........................................................................................ 3

7 U.S.C. § 499e(c) .................................................................................... 2

7 U.S.C. § 499g(b) ................................................................................ 4

Ohio Rev. Code § 1343.03(A) ......................................................... 26, 27

Perishable Agricultural Commodities Act of 1930, as amended, 7 U.S.C.
  §§ 499a – 499t ................................................................... 1, 3, 9, 10, 15

**Rules**

7 C.F.R. §§ 47.1-47.49 ......................................................................... 3

Fed. R. Civ. P. 54(b) ............................................................................. 6

Fed. R. Civ. P. 54(d)(1) .................................................................. 1, 22

## MEMORANDUM IN SUPPORT OF APPLICATION FOR AWARDS OF ATTORNEYS' FEES AND COSTS; FOR SEPARATE AWARD OF ONLY TAXABLE COSTS; AND FOR AWARDS OF INTEREST

In support of its Application for Awards of Attorneys' Fees and Costs; for an Award of Taxable Costs under Fed. R. Civ. P. 54(d)(1) and 28 U.S.C. § 1920; and for Awards of Interest; Plaintiff R & R Ag Consulting, Inc. (formerly known as R & R Produce, Inc.) ("Plaintiff" or "R & R"), by and through counsel, submits the following points and authorities:

## I.  FACTUAL AND PROCEDURAL HISTORY

Plaintiff commenced doing business with Defendant P.K. Produce, Inc. ("P.K. Produce") in the summer of 2017 and concluded doing business with P.K. Produce in October of 2018 ("Relevant Period").[1]

During the Relevant Period, Plaintiff was licensed under the Perishable Agricultural Commodities Act of 1930, as amended, 7 U.S.C. §§ 499a – 499t ("PACA") to buy and sell produce (License No. 19931410).[2]  David Rossi ("Rossi"), President of Plaintiff, was listed as a principal on the Plaintiff's PACA license and was the person in charge of selling produce to P.K. Produce.[3]

During the Relevant Period, P. K. Produce was licensed under PACA to buy and

---

[1] Findings of Fact & Conclusions of Law, Doc. No. 341 ("Findings"), at PageID# 8440, Par. 16 and at PageID# 8448, Par. 55.
[2] Findings, at PageID# 8439, Par. 13.
[3] Findings, at PageID# 8440, Par. 14.

1

sell produce (License No. 20161129), and Defendant Paul Kasapis ("Paul") was listed as the sole principal.[4]

In June of 2018, Rossi leaned that Paul was in prison.[5] After Paul went to prison, and before P.K. Produce shut-down, between August 27, 2018 and October 12, 2018, R & R sold eight orders of fresh produce (the "Produce") to P.K. Produce pursuant to Invoices (the "PACA Invoices") which totaled the amount of $131,983.35 that were not paid for by P.K. Produce.[6]  Four of the eight outstanding PACA Invoices had price adjustments based on the quality of the Produce delivered.[7]

Each of the PACA Invoices contained the proper PACA trust notice, stated as follows: "The perishable agricultural commodities listed on this invoice are sold subject to the statutory trust authorized by section 5 (c) of the Perishable Agricultural Commodities Act, 1930 (7 U.S.C. 499e(c)). The seller of these commodities retains a trust claim over these commodities, all inventories of food or other products derived from these commodities, and any receivables or proceeds from the sale of these commodities until full payment is received".[8]

The payment terms listed on each of the PACA Invoices was "Net 10 days".[9]

---

[4] Findings, at PageID# 8437, Par. 3.
[5] Findings, at PageID# 8443, Par. 32.
[6] Findings, at PageIDs# 8443-8444, Par. 36, and PageIDs# 8445-8446, Par. 40.
[7] Findings, at PageID# 8445, Par. 39.
[8] Findings, at PageID# 8444, Par. 37.
[9] *Id.*

Each of the PACA Invoices provided that interest would accrue on any past-due account balance at the rate of 1.5% per month (18% per annum).[10] Each of the PACA Invoices provided that in the event that a collection action becomes necessary P.K. Produce would "pay all costs of collection, including attorneys' fees."[11]

Debra Kasapis ("Debra"), Paul's wife, decided to abruptly shut-down P.K. Produce without warning on October 31, 2018, without paying Plaintiff for the amount outstanding under the PACA Invoices.[12]

On December 3, 2018, R & R commenced a formal reparation proceeding under PACA and the Rules of Practice under the PACA (7 C.F.R. §§ 47.1-47.49) (Rules of Practice), by filing a timely reparation Complaint (the "PACA Complaint") against P.K. Produce with the PACA Branch to collect the amounts due pursuant to the PACA Invoices.[13] Thereafter, the PACA Complaint was served on P.K. Produce, but P.K. Produce failed to timely respond.[14]

On March 27, 2019, a Judicial Officer from the Office of the U.S. Secretary of Agriculture issued a Default Order (the "PACA Default Order"), which concluded that P.K. Produce had violated Section 2 of the PACA (7 U.S.C. § 499b), and as such was required to pay R & R the sum of $131,983.35 as reparation, with interest at the rate

---

[10] *Id.*

[11] *Id.*

[12] Findings, at PageID# 8448, Par. 54, and PageID# 8449, Pars. 58-59.

[13] Findings, at PageID# 8452, Par. 69.

[14] *Id.*

of 18% per annum (1.5% per month) from November 1, 2018 thru March 27, 2019, plus additional interest until paid in full, plus the amount of $500 for the PACA Complaint handling fee (the "PACA Judgment").[15]

On March 28, 2019, the Chief of the Dispute Resolution Branch of the PACA Branch sent a letter to R & R which enclosed the PACA Default Order (the "PACA Default Order Letter"). The PACA Default Order Letter informed R & R that if P.K. Produce did not pay the amount of the PACA Judgment within 30 days of issuance of the PACA Default Order then the PACA License issued to P.K. Produce would be suspended effective as of the close of business on May 6, 2019. The PACA Default Order Letter further informed R & R that the PACA Branch had determined that Defendant Paul was a responsibly connected individual to P.K. Produce. The PACA Default Order Letter further informed R & R that if the PACA Judgment was not satisfied in accordance with the terms of the PACA Default Order that R & R had a right to file suit in U.S. District Court to enforce its rights pursuant to Section 7(b) (7 U.S.C. §499g(b)) of PACA.[16]

P.K. Produce failed to pay R & R the amount due pursuant to the PACA Default Order within 30 days of the date of issuance of the PACA Default Order.[17]

---

[15] Findings, at PageIDs# 8452-8453, Par. 70.

[16] Findings, at PageID# 8453, Pars. 71-72.

[17] Findings, at PageID# 8453, Par. 73.

On May 29, 2019, R &R filed a Complaint in U.S. District Court Northern District of California against P.K. Produce, Paul, Debra and George Argie and the Law Firm of Argie, D'Amico & Vitantonio (the "Argie Defendants").[18]  R & R retained Anastassiou & Associates to file the Complaint, a law firm located in the Northern District of California with extensive experience in PACA claims.[19]

Subsequently, in July of 2019, after learning of this pending action, R & R filed a joint motion to consolidate its complaint in this Court with other pending complaints by PACA creditors against P.K. Produce,[20] and this Court then entered an Order to Consolidate on August 2, 2019.[21] The consolidated action ultimately involved the PACA claims of ten (10) Plaintiffs (the "PACA Plaintiffs").[22] Plaintiff subsequently filed a First Amended Complaint, which became its operative pleading, which asserted claims against additional Defendants, including the following other businesses owned by Paul and Debra: a trucking company, Defendant Magnum Express Trucking, Inc. ("Magnum Express"); a bowling alley, Defendant Strike Zone Lanes, LLC ("Strike Zone Lanes"), and rental properties, Defendant Sipasak Properties, LLC ("Sipasak Properties).[23]

---

[18] Findings, at PageID# 8453, Par. 74.
[19] Declaration of Effie F. Anastassiou ("Anastassiou Decl.") filed concurrently herewith, at Par. 2.
[20] Doc. No. 58.
[21] Doc. No. 59.
[22] Findings, at PageID# 8453, Pars. 74.
[23] Doc. No. 97.

During this litigation, the Plaintiff was involved in the filing of several joint motions together with the other PACA Plaintiffs.  Those motion included a Joint Motion for Entry of Order Determining Validity and Extent of PACA Trust Claims,[24] a Joint Motion for Partial Summary Judgment,[25] a Motion for Fed. R. Civ. P. 54(b) Determination and Entry of Final Judgment,[26] and Motions to Modify the Preliminary Injunction.[27]

During the course of this litigation, the Plaintiff was involved in conducting extensive discovery together with the other PACA Plaintiffs, which included requests for production of documents, and the subpoena of bank records and other third-party records which were ultimately used as evidence at trial,[28] together with the taking of depositions, resulting in Plaintiff's counsel having to travel to Cleveland, Ohio on November 6 thru 8, 2019 to take depositions of key witnesses, which included Debra, Paul and Jeffrey Heestand, the manager of P.K. Produce while Paul was in prison.[29]

The Plaintiff was also involved in an extended round of remotely conducted mediation proceedings which were ultimately unsuccessful.[30]

The Plaintiff, together with the PACA Plaintiffs, participated in the Final

---

[24] Doc. Nos. 83-85, and Findings at PageID# 8413.
[25] Doc. Nos. 184, and Findings at PageID# 8414.
[26] Doc. Nos. 235, 240, and Findings at PageID# 8416.
[27] Doc. Nos. 234, 236 and Findings at PageID# 8416.
[28] *See, e.g.,* Trial Exhibit Nos. P11 thru P17.
[29] Anastassiou Decl., at Par. 4.
[30] Findings at PageID# 8415.

Pretrial Conference held in Cleveland, Ohio on August 18, 2022, requiring Plaintiff's counsel to travel to Cleveland, Ohio.[31]

An amount of $10,117.90, ordered by this Court to be distributed to R & R from IOLTA trust funds, pursuant to Court Order Dated September 2, 2022, Doc No. 256 ("Distribution Order"), was received by Plaintiff in September 2022, and was applied to reduce the principal amount of the debt owed by P.K. Produce to Plaintiff to the amount of $121,865.45, which remains outstanding.[32]

From September 19, 2022 thru September 23, 2022, and on January 26, 2023, trial was held in this case in Cleveland, Ohio, requiring Plaintiff's counsel to travel to Cleveland, Ohio.[33]  Thereafter, Plaintiff filed extensive Post-Trial Briefs on March 14, April 24 and July 25, 2023 pursuant to this Court's orders.[34]

A decision was made by this Court in favor of the Plaintiff as the prevailing party and against the Defendants P. K. Produce, Debra, Paul, Magnum Express, Sipasak Properties, Strike Zone Lanes, and the Argie Defendants, on August 31, 2023.[35]  The Court's decision stated that Plaintiff was entitled to a judgment in its favor which included, in addition to the principal amounts owed, awards of attorneys' fees

---

[31] Findings at PageID# 8416 and Anastassiou Decl. at Par. 4.
[32] Findings, at PageID# 8457.
[33] Findings at PageID# 8418 and Anastassiou Decl. at Par. 4.
[34] Doc. Nos. 322, 329 and 337.
[35] Findings at PageIDs# 8515-8517.

and/or costs and pre-judgment interest.[36] The Court issued an order to the Plaintiff to file a motion by October 2, 2023, supported by affidavits and documents, setting forth the amounts of attorneys' fees, interest and costs that the Plaintiff seeks to be awarded.[37]

## II.  REASONABLE ATTORNEY'S FEES AND COSTS INCURRED IN CONNECTION WITH THE LITIGATION OF THIS CASE HAVE BEEN ESTABLISHED BY DECLARATIONS AND OTHER SUPPORTING DOCUMENTS

When rendering a decision on the amount of a "reasonable" attorney's fee award, the Sixth Circuit directs the trial court to initially determine the fee applicant's "lodestar," "which is the proven number of hours reasonably expended on the case by an attorney, multiplied by his court-ascertained reasonable hourly rate."[38] The trial court may then, within limits, adjust the "lodestar" dependent on relevant considerations which apply to the particular litigation, the most important of which is the result achieved.[39] "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee."[40] A "strong presumption" favors awarding the lodestar fee to a prevailing party's attorney.[41]

---

[36] *Id.*

[37] Findings at PageID# 8517.

[38] *Adcock-Ladd v. Secretary of Treasury,* 227 F.3d 343, 349 (6th Cir. 2000), *citing Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

[39] *Adcock-Ladd, supra, citing Hensley,* 461 U.S. at 435-436.

[40] *Id.* at 435.

[41] *Adcock-Ladd, supra*, at 350, *citing City of Burlington v. Dague,* 505 U.S. 557, 562 (1992).

**A. <u>The Number of Hours Expended on This Case by Anastassiou & Associates Were Reasonable to Achieve the Results Obtained—Prevailing on the Merits on Plaintiff's PACA Claims Against the Named Defendants</u>**

The Plaintiff was represented in this matter by the law firm of Anastassiou & Associates, based in Salinas, California. Lead counsel in the case was Effie F. Anastassiou, Esq., an attorney who has specialized in the field of agricultural law since 1986 and handled numerous cases arising under PACA.[42] The law firm of Anastassiou & Associates was initially retained by Plaintiff to file the claims litigated in this case in the U.S. District Court in the Northern District of California, in which district the Plaintiff's business is located (as is the law firm of Anastassiou & Associates), on May 29, 2019.

Plaintiff continued to retain the law firm of Anastassiou & Associates to represent the Plaintiff when this case was consolidated with a pending action in this Court filed by other plaintiffs with PACA claims against P.K. Produce, in which Court a Preliminary Consent Injunction had been entered with respect to P.K. Produce's assets.[43]

It was reasonable for Plaintiff to use California counsel in this case, given that the case was commenced in California, involved a California based Plaintiff, and Plaintiff's counsel specializes in agricultural law and is experienced in handling PACA

---

[42] Anastassiou Decl., at Par. 2.
[43] Id., and Doc. No. 281.

matters.[44] The Court can take judicial notice of its own docket in this case and recognize that multiple other plaintiffs in this case (and one of the defendants) retained experienced PACA counsel who were located outside of Ohio. Agricultural law in general, and PACA law in particular, is a specialty area of the law.[45] The Northern District of Ohio area is not known for commercial production of fresh produce, and hence not likely to have many attorneys with the specialized expertise in PACA necessary to litigate this case.

The total amount of time spent by Anastassiou & Associates on this matter during the period from May 1, 2019 (the month when the case was initially filed) thru October 1, 2023 (thru trial and post-trial briefing, including this Application) was 484.02 hours of attorney time and 540.22 hours of paralegal and clerical time, for a total of $259,661.80 in attorneys' fees billed and paid by the Plaintiff.[46] A summary itemization of the monthly fees and hours incurred and billed to Plaintiff and paid by Plaintiff in this matter are attached as **Exhibit "A"** to the Anastassiou Decl. Detailed itemizations of the time spent by Anastassiou & Associates and fees incurred are set forth in the billing statements attached as **Exhibit "B"** to the Anastassiou Decl.[47]

This case, which has been prosecuted by Plaintiff in this Court for over four

---

[44] Anastassiou Decl., at Par. 9.
[45] Anastassiou Decl., at Par. 8. *See* also Declaration of Paul W. Moncrief at Par. 4.
[46] Anastassiou Decl., at Par. 3.
[47] *Id*.

years,[48] involved complex factual issues involving multiple defendants, and ultimately resulted in the entry of a favorable decision for Plaintiff against all Defendants against whom claims were pending as of the date that the Plaintiff submitted this matter for decision to the Court.[49]

As referenced above, in order to prosecute this case five depositions had to be taken,[50] subpoenas had to be issued, and written discovery had to be propounded, in order to gather the evidence necessary to establish that the PACA assets of P.K. Produce had been wrongfully distributed to the Defendants and were required to be disgorged. There were also several rounds of unsuccessful mediations required as part of the Court process.

The case required Plaintiff's counsel to travel from California to Cleveland, Ohio on multiple occasions, including to take depositions, attend the Final Pretrial Conference, and attend trial on two separate occasions, with 6 total days of trial.[51]

Prior to obtaining a final ruling in its favor, several motions were filed by Plaintiff which included the successful establishment of the validity of Plaintiff's PACA Trust Claim,[52] and partial summary judgment in Plaintiff's favor on several disgorgement claims, and on Debra's secondary liability for P.K. Produce's breaches

---

[48] And previous to that, as an administrative case before the PACA Branch.
[49] Anastassiou Decl., at Par. 12, and Findings.
[50] *See* Anastassiou Decl., at Par. 4, and Trial Exhibit JT1, P19, P20, P21, and P22.
[51] Anastassiou Decl., at Par. 4.
[52] Doc. No. 186.

of its contracts with the Plaintiff.[53]

Nevertheless, final issues of fact remained to be determined during 6 days of trial, including a determination that P.K. Produce had in fact breached the Plaintiff's contracts (Count I), which claim was required to be proved prior to entry of judgment against each and every Defendant, as well as issues of fact relating to disgorgement claims against Paul and Debra (Count IV), and constructive trust claims against Paul and Debra (Count VIII).

At the conclusion of trial, the Court found in favor of the Plaintiff on all remaining counts, except for Count VIII, constructive trust. The Court ruled that P.K. Produce breached its contracts with the Plaintiff, that Debra was secondarily liable for P.K. Produce's PACA debts owed to the Plaintiff, and that all Defendants were required to disgorge PACA assets of P.K. Produce that were wrongfully taken. In addition, the Court ruled that Plaintiff was entitled to awards of pre-judgment interest and attorneys' fees and costs.

The Court determined that the Plaintiff's constructive trust claim was an alternative cause of action to Plaintiff's PACA trust claim and was unnecessary given that the Court ruled in the Plaintiff's favor on the disgorgement claims in Count IV.[54]

The Court also ruled that Paul was not secondarily liable for P.K. Produce's PACA debts owed to the Plaintiff because after Paul went to jail, he was no longer a

---

[53] Doc. No. 195.
[54] Findings, at PageID# 8515.

shareholder, officer, or director of P.K. Produce, and he was no longer able to control the PACA assets, and hence he failed to meet the Sixth Circuit tests for individual liability.[55] However, the Court did find that Paul was liable for the substantial disgorgement amount of $184,368.16,[56] and that Plaintiff was entitled to its pro-rata share of that amount.[57]

Thus, counsel for Plaintiff in this case prevailed on substantially all of its claims and obtained a successful result on complex factual issues involving multiple defendants. Under these circumstances, Plaintiff's counsel submits that the amount of fees incurred are reasonable.

In sum, the time and effort, quality of work and results achieved support the requested fee award.[58] The fees and costs incurred by the Plaintiff to prosecute this case should be awarded in full because all of Plaintiff's claims were based on a common core of facts, the non-payment of eight produce invoices, and the dissipation of PACA trust assets that should have been used to pay those invoices, and related legal theories, and were not distinct claims.  In determining attorneys' fee awards, the Sixth Circuit has "repeatedly rejected mechanical reductions in fees based on the number of issues on which a plaintiff has prevailed."[59] "Litigants in good faith may

---

[55] Findings, at PageID#s 8511-8513.
[56] Findings, at PageID# 8478.
[57] Findings, at PageID# 8479.
[58] Anastassiou Decl., at Par. 12.
[59] *Imwalle v. Reliance Medical Products, Inc.*, 515 F.3d 531, 554 (6th Cir. 2008),

raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing the fee.  The result is what matters."[60]

### B. Anastassiou & Associates Billed at Reasonable Hourly Rates Which Were at the Prevailing Rates in the Local Community

A reasonable hourly rate is based on the experience, skill and reputation of the attorneys, and the prevailing rate in the community for similar work performed by attorneys of comparable skill and reputation. *See Blum v. Stenson*, 465 U.S. 886 (1984). "A useful guide in determining a reasonable hourly rate is the 'prevailing market rate' in the relevant community."[61]

Lead counsel, Ms. Anastassiou, is a 1980 graduate of Columbia University Law School, where she was an Editor of the Law Review, a Harlan Fiske Stone Scholar, and a Lawrence Wein Scholar.  Ms. Anastassiou was admitted to the California State Bar in 1980 and has been a practicing attorney for over forty-two (42) years. Ms. Anastassiou has worked in the field of agricultural law since 1986, commencing with her working as in-house counsel for Dole Fresh Vegetables and Dole Food Company in 1986. After she left Dole in 1992, she continued in the field of agricultural law as

---

citing *Déjà vu of Nashville v. Metro. Gov't of Nashville and Davidson County*, 421 F.3d 417, 423 (6th Cir. 2005).

[60] *Imwalle, supra*, at 554, *citing DiLaura v. Twp. Of Ann Arbor*, 471 F.3d 666, 672 (6th Cir. 2006).

[61] *Dobina v. Carruthers*, 2010 U.S. Dist. LEXIS 43958, at *4 (N.D. Ohio May 3, 2010), *citing Dowling v. Litton Loan Servicing LP*, 320 Fed. Appx. 442, 447 (6th Cir. 2009).

the owner of her own law firm through the present date. Ms. Anastassiou specializes in civil litigation in agricultural-related matters and has handled numerous cases arising under PACA.[62] During a portion of the case, Ms. Anastassiou was assisted by Associate Attorney Deidra Austin Zolezzi, Esq., a member of the California State Bar with over 30 years of experience.[63]

During the course of this litigation, the hourly rates charged by R & R's legal counsel were as follows:

(i) Lead Attorney Effie Anastassiou's time was billed at: $375.00 per hour in 2019; $425.00 per hour in 2020 and 2021, and $500 per hour in 2022 and 2023;

(ii) Associate Attorney Deidra Austin Zolezzi's time was billed at: $350 per hour in 2020 and 2021, and $400.00 per hour in 2022;

(iii) Paralegal time was billed at: $150 per hour in 2019, $160 per hour in 2020 and 2021, and $180.00 per hour in 2022 and 2023; and

(iv) Secretarial word processing time was billed at: $50 per hour in 2019, $60 per hour in 2020 and 2021, and $80.00 per hour in 2022 and 2023.

Plaintiff has filed the Declaration of Paul W. Moncrief, Esq. to support the rates charged by Ms. Anastassiou for legal fees as being in accord with the prevailing rates in the Monterey County, California community where the Anastassiou & Associates

---

[62] *See* Anastassiou Decl., at Par. 9 and **Exhibit "D"** (CV).
[63] *See* Anastassiou Decl., at Par. 10.

law office is located.  Mr. Moncrief has been a practicing attorney in California since 1999, with a law office in Salinas, California, and also specializes in agricultural law and handles PACA matters.  Mr. Moncrief represents that during the period of 2019 thru 2023 his hourly billing rate ranged from $450 per hour to $475.00 per hour. Mr. Moncrief also opines that Ms. Anastassiou has a stellar local reputation and that her billing rates are very reasonable given her skill, experience and reputation.

The Sixth Circuit considers whether it was necessary to go outside the area to obtain counsel, due to the specialized expertise of the counsel retained. For example, in *Harmon v. McGinnis, Inc.*,[64] an attorney from the Washington D. C. area who specialized in longshoreman cases "warranted an enhanced fee, [with the court] finding that he 'is a well-qualified attorney who practices in [a] highly specialized area of the law' and that his services were 'both extraordinary and necessary to effectuate fulfillment of the decision' ". Based thereon, the attorney was awarded $50.00 per hour greater than local counsel.

C.   **The Billing Rates Charged by Anastassiou & Associates Were Less Than the Reasonable Hourly Rates in Ohio Based on the *Laffey Matrix*, as Adjusted for Cost-of-Living Differentials**

When out-of-district counsel is used on a case, the Sixth Circuit may also consider the "relevant community" for fee purposes to include the legal community within that court's territorial jurisdiction, and the "prevailing market rate" for lawyers

---

[64] 263 Fed. Appx. 465, 468 (6th Cir. 2008).

of comparable skill and experience within the venue of the court of record, if the reasonable "home" rate exceeds the reasonable "local" charges of the out-of-district counsel.[65]

However here even if the Northern District of Ohio market rates were to be considered, the "prevailing market rates" in Monterey County, California were less than the rates charged in Columbus, Ohio, during the period at issue using the "*Laffey Matrix*" as the measure, lending further support that the rates charged by Anastassiou & Associates were "reasonable."

"The '*Laffey Matrix'* is an official statement of market-supported reasonable attorney fee rates which was adopted, and is periodically updated, by the United States Court of Appeals for the District of Columbia."[66] The *Laffey Matrix* is a tool that has been frequently used by the Sixth Circuit and other federal courts to evaluate whether or not the fees charged by an attorney are charged at a reasonable hourly rate.[67] The hourly rates set forth in the *Laffey Matrix* have been adjusted by federal courts to reflect the rates in the particular locale at issue, by adjusting for the different costs of living

---

[65] *Adcock-Ladd v. Secretary of Treasure,* 227 F. 3d 343, 350 (6th Cir. 2000).

[66] *Adcock-Ladd, supra,* at 347, Footnote 3, *citing Laffey v. Northwest Airlines, Inc.*, 746 F.2d 4 (D.C. Cir. 1984) and subsequent appellate history.

[67] See, e.g. *Adcock-Ladd, supra; Harmon v. McGinnis, Inc.*, *supra*, at 468-469 (6th Cir. 2008); and *Dobina v. Carruthers*, *supra*, at *4-5 and Footnote 1. *See also In re Sonic Corp. Customer Data SEC Breach Litig. Fin. Institutions*, 2022 U.S. Dist. LEXIS 189402, at *12 (N.D. Ohio, October 17, 2022), approving the use of the *Laffey Matrix* to evaluate "reasonable" hourly rates; *Chapman v. Tristar Prods.*, 2018 U.S. Dist. LEXIS 133555, at *19 (N.D. Ohio Aug. 3, 2018) (same); *Gallo v. Moen, Inc.*, 2014 U.S. Dist. LEXIS 128032, at *10-11 (N.D. Ohio Sept. 11, 2014).

in different locations where federal courts are located, as compared to the District of Columbia, using the federal court website which sets forth locality pay differentials (the "Judiciary Salary Plan Website").[68]

Here, the Plaintiff has filed a Request for Judicial Notice ("RJN"), with a downloaded copy of the *Laffey Matrix,* which sets forth fee rates for attorneys (based on years out of law school), as well as for paralegals and law clerks, for the Washington-Baltimore area during the period at issue.[69] The *Laffey Matrix* establishes that the rates for legal fees for lawyers with 20 or more years of experience (such as Ms. Anastassiou and her associate attorney) ranged from $894.00 per hour in May of 2019 to $1,057 per hour in October of 2023.

The Plaintiff's RJN also includes a downloaded copy of the Judiciary Salary Plan for the Washington-Baltimore-Arlington area, 32.49% Locality Payment as of January 2, 2023 ("D.C. Area Rates"),[70] and a downloaded copy of the Columbus-Marion-Zanesville, Ohio area, 21.27% Locality Payment as of January 2, 2023 ("Ohio Area Rates").[71] Based on the adjustments set forth in the Judiciary Salary Plan, as of January 2, 2023, the Ohio Area Rates are 11.22% less than the D. C. Area Rates. This would mean that the *Laffey Matrix* legal fee rates of between $894 per hour and $1057

---

[68] *See, e.g. In re HPL Techs., Inc., Secs. Litig.*, 366 F. Supp. 2d 912, 921-922 (N.D. CA 2005), and *Theme Promotions, Inc. v. News Am. Mktg. FSI, Inc.*, 731 F. Supp. 2d 937, 948 (N.D. CA 2010).
[69] RJN, at Par. 1 and **Exhibit "1"**.
[70] RJN, at Par. 2 and **Exhibit "2"**.
[71] RJN, at Par. 3 and **Exhibit "3"**.

per hour for the period of May 2019 to October 2023, should be reduced by 11.22% to generally account for the cost-of-living differential between those two areas, making the Ohio Area Rates between $793.69 per hour and $938.40 per hour for the relevant time period.

Hence, the legal fee rates charged by Anastassiou & Associates during the relevant time period, which ranged from $350.00 per hour in May 2019 to $500 per hour in October 2023, were far lower than the Ohio Area Rates, based on the *Laffey Matrix*, as adjusted by the cost-of-living differentials in the Judiciary Salary Plan.

Similarly, the paralegal rates charged by Anastassiou were far lower than *Laffey Matrix*, as adjusted to the Ohio Area Rates. The *Laffey Matrix* paralegal fee rates were between $202 per hour and $239 per hour during the relevant time period, which when adjusted for the Ohio Area Rates, were between $179.34 per hour and $212.18 per hour for the relevant time period. In contrast, the paralegal rates charged by Anastassiou & Associates were between $150 per hour and $180 per hour during the relevant time period.

**D.** **The Costs Incurred by Plaintiff Were Necessary to Prosecute This Matter and are Supported by Documentation**

The total costs incurred by the Plaintiff and billed and paid by the Plaintiff in this case, are described in the itemized billing statements attached to the Anastassiou Decl. and are supported by documentation.[72] Each cost listed was necessary to

---

[72] Anastassiou Decl., at Par. 3 and **Exhibit "B"**.

prosecute this matter. The total costs billed to the Plaintiff thru October 1, 2023 were $29,355.12.[73]

In addition, Plaintiff directly paid for hotel bills incurred by Ms. Anastassiou when she traveled to Cleveland, Ohio to attend the pre-trial conference, and attend trial for this case. The total hotel costs directly paid by Plaintiff for Ms. Anastassiou to stay in Cleveland, Ohio for the prosecution of this case is $3,435.28, which costs are supported by documentation.[74]

Plaintiff is seeking an award of costs in the total amount of $32,790.40, as a part of its attorneys' fee award.[75]

### E.  The Attorneys' Fees and Costs Incurred Should be Apportioned Among the Defendants Based on Their Proportionate Liability for the Principal Amount of Plaintiff's Damages

Plaintiff is seeking a total award of attorneys' fees in the amount of $259,661.80, and costs in the total amount of $32,790.40 (including billed costs on the Anastassiou & Associates billing statements, and hotel costs paid directly by Plaintiff, as noted above), for a grand total of $292,452.20.[76]

The total amount of attorneys' fees and costs incurred should be apportioned

---

[73] Anastassiou Decl., at Par. 3 and **Exhibit "A"**.
[74] Anastassiou Decl., at Par. 4 and **Exhibit "C"**. In addition, Ms. Anastassiou stayed in Cleveland, Ohio when she took depositions in this case (Nov. 6 thru Nov. 8, 2019), but paid the hotel directly on that occasion and included the cost thereof of $355.47 in the December 1, 2019 billing statement. *Id.*
[75] Anastassiou Decl., at Par. 5 and **Exhibits "A", "B"** and **"C"**.
[76] *Id.*.

among each of the Defendants (except the Argie Defendants) using the general "rule of thumb" followed in the Sixth Circuit to apportion damages among defendants, which is based on proportionate liability of each of the Defendants for the principal amount of Plaintiff's damages.[77] There is no other precise way to segregate the time that the Plaintiff spent exclusively on claims against each defendant because of the common facts and elements of proof relating to each claim (such as proving that P.K. Produce breached its contracts with Plaintiff, and that the Plaintiff perfected its PACA claim).  Accordingly, the fairest way to ensure that each Defendant contributes significantly to paying the attorney's fees and costs, yet is not compensating Plaintiff for legal services spent against another Defendant, is to allocate based on proportionate liability.[78]

Accordingly, the amount of attorneys' fees and costs to be awarded against each Defendant (except the Argie Defendants) is as follows:  Defendant P.K. Produce (Count I) $292,452.20 (100%), Debra (Count IV) $72,820.60 (24.9%), Paul (Count IV) $66,649.86 (22.79%), Magnum Express (Count IV) $21,056.56 (7.2%), Sipasak Properties (Count IV) $3,714.14 (1.27%), Strike Zone Lanes (Count IV) $1,023.58 (.35%), and Debra (Count V) $292,452.20 (100%).[79]

---

[77] *See Kendall Holdings, Ltd v. Eden Cryogenics LLC*, 2014 U.S. Dist. LEXIS 146816, at *63-64 (S.D. Ohio March 4, 2014), *citing Davis v. Mut. Life Ins. Co.*, 1990 U.S. Dist. LEXIS 21116, at *19 (S.D. Ohio Aug. 9, 1990) and *Riggins v. Hunt*, 2007 U.S. Dist. LEXIS 8879, at *6 (S.D. Ohio Feb. 5, 2007).
[78] *See Davis, supra, citing to Marr v. Rife*, 545 F.2d 554, 556 (6th Cir. 1976).
[79] Anastassiou Decl., at Par. 5 and **Exhibit "D"**.

**F.  The Taxable Costs Incurred Should be Apportioned to the Argie Defendants Based on Their Proportionate Liability for the Principal Amount of Plaintiff's Damages**

Pursuant to this Court's ruling, Plaintiff is seeking an Award of only taxable costs (the "Taxable Costs") under Fed. R. Civ. P. 54(d)(1) and 28 U.S.C. § 1920 against the Argie Defendants, based on the Bill of Costs filed concurrently herewith and supported with itemization and documentation.  The Taxable Costs which may be recovered are set forth in the Bill of Costs form and include such items as fees of the clerk, fees for service of summons and subpoenas, fees for transcripts, fess for printing, fees for witnesses, fees for copy costs for copies used in the case, docket fees, and other miscellaneous costs.

Although the Taxable Costs are included as a part of all of the costs included in the bills itemizing attorneys' fees and costs,[80] the Taxable Costs are also broken out and itemized and supported in the separately filed Bill of Costs (which does not include all of the costs billed to the Plaintiff).  The Taxable Costs total the amount of $15,772.41.[81]

Using the general "rule of thumb" followed in the Sixth Circuit, based on the proportionate liability of the Argie Defendants for the principal amount of Plaintiff's damages, which proportionate liability is 11.99%, the Taxable Costs which should be

---

[80] Anastassiou Decl., at Par. 6 and **Exhibits "A"** and **"B"**. The Anastassiou & Associates billing statements also include additional costs itemized therein. *Id.* at Par. 6 and **Exhibit "B"**.

[81] Anastassiou Decl., at Par. 6 and Bill of Costs filed concurrently herewith.

awarded against the Argie Defendants is $1,891.11.[82]

## III.     INTEREST SHOULD BE AWARDED AGAINST EACH OF THE DEFENDANTS BASED ON THE PLAINTIFF'S CONTRACT RATE OF 18% PER ANNUM

The Plaintiff has calculated the amount of interest which has accrued on the principal amount owed by each Defendant from October 24, 2018 thru October 2, 2023, based on the Plaintiff's contract rate of 18% per annum, as follows: Defendant P.K. Produce (Count I) $108,416.85,[83] Debra (Count IV) $27,013.91,[84] Paul (Count IV) $24,718.11,[85] Magnum Express  (Count IV) $7,808.94,[86] Sipasak Properties (Count IV) $1,387.62,[87] Strike Zone Lanes (Count IV) $387.87,[88] Argie Defendants (Count IV) $13,009.48,[89] and Debra (Count V) $108,416.85.[90]

In this Court's ruling, the Court decided to exercise its discretion to award prejudgment interest to Plaintiff against the Argie Defendants, but left open the rate of interest to be charged, *i.e.* whether it would be at the Plaintiff's contract rate of 18% per annum, or at the Ohio statutory rate for prejudgment interest, and invited the parties

---

[82] Anastassiou Decl., at Par. 6.
[83] Anastassiou Decl., at Par. 12 and **Exhibit "F"**.
[84] Anastassiou Decl., at Par. 13 and **Exhibit "G"**.
[85] Anastassiou Decl., at Par. 14 and **Exhibit "H"**.
[86] Anastassiou Decl., at Par. 15 and **Exhibit "I"**.
[87] Anastassiou Decl., at Par. 16 and **Exhibit "J"**.
[88] Anastassiou Decl., at Par. 17 and **Exhibit "K"**.
[89] Anastassiou Decl., at Par. 18 and **Exhibit "L"**.
[90] Anastassiou Decl., at Par. 20 and **Exhibit "N"**.

to address this issue in their briefing.[91] The Court ruled that all other Defendants were to be assessed interest at the Plaintiff's contract rate of 18% per annum.[92]

The Plaintiff submits that this Court should award interest against the Argie Defendants at the Plaintiff's contract rate because the Argie Defendants were on actual notice of the Plaintiff's contract rate of interest of 18% per annum since June 6, 2019, when the Argie Defendants were served with the Plaintiff's initial Complaint filed in the U.S. District Court in the Northern District of California (the "California Complaint").[93] The California Complaint clearly sought interest on the Plaintiff's disgorgement claim against the Argie Defendants at the contract rate of 18% per annum.[94] The Initial Complaint also included copies of Plaintiff's invoices to P.K. Produce which clearly stated that interest accrued on past due amounts owed for produce at the rate of 18% per annum.[95]

The Plaintiff submits that this Court should also award interest against the Argie Defendants at the Plaintiff's contract rate because the Argie Defendants have been on notice since June 2, 2021, when the Court made its rulings on the Plaintiff's motion

---

[91] Findings, at PageID# 8503, and Footnote 40.

[92] Findings, at PageID#s 8500-8501.

[93] *See* Proofs of Service of the California Complaint on the Argie Defendants, included in the RJN at **Exhibit "6"** and **"7"**.

[94] *See* California Complaint, ECF No. 1, at Page 21 of 75, setting forth the damages claim with respect to the Fourth Cause of Action for disgorgement, included in the RJN at **Exhibit "5"**.

[95] *See* Invoices included in the Exhibits to the Complaint, ECF No. 1, at Pages 34, 37, 39, 40, 48, 52, 57, and 64 of 75, included in the RJN, at **Exhibit "7"**.

for partial summary judgment, that the Court had definitively determined that the Argie Defendants were required to disgorge the amount of $14,623.35 to the Plaintiff, because those funds were impressed with the PACA trust.[96]  Yet since that date, the Argie Defendants have taken no action to disgorge the amount that this Court determined was owed to the Plaintiff, despite the fact that the Argie Defendants are attorneys and must be assumed to have clearly understood the import of this Court's decision.

As the Court observed in its underlying decision, it was Congress' intent to promote prompt and full payment to produce sellers.[97]  Accordingly, attorneys who knowingly hold onto PACA money which is subject to a contract which requires the payment of 18% per annum interest for past due amounts, should be required to pay the same interest rate as the produce buyer who entered into the contract and then decided to transfer the money to the attorney rather than pay the produce seller. Otherwise, an incentive is created for the produce buyer to pass the money to its attorney to avoid its contracted rate of interest on past due amounts.

Moreover, awarding interest at the contract rate in this case against the Argie Defendants would be in accord with federal PACA decisions in other circuits,[98] as well as in accord with other district court decisions in the Sixth Circuit which have

---

[96] Doc. No. 195, at PageID#s 3861-3863.
[97] Findings, at PageID# 8502.
[98] *See, e.g.* cases cited in Findings, at PageID#s 8499-8500.

awarded interest at the contract rate against third party defendants in PACA cases. For example, the court in *L & M Companies, Inc. v. Lakeside Produce, Inc.*,[99] awarded prejudgment interest against third party defendants based on a contractual provision of interest at the rate of 9% in the produce seller's invoices.

Similarly, in *La Grasso Bros., Inc. v. Am. Foodservice, L.L.C.*,[100] the Court noted that since the plaintiff held a valid PACA trust claim, its PACA claim against the owner of the company also included a right to recover "attorney's fees, costs, and interest so long as there exists a contractual right to these fees."[101]  The court then when on to find that the invoices at issue did not have an attorneys' fees and cost provision, but did have an 18% interest clause, which entitled the plaintiff to pre-judgment interest at the rate of 18%, but not attorneys' fees and costs.[102]

Alternatively, in the event that this Court decides not to award interest against the Argie Defendants at the contract rate of 18% per annum, the Plaintiff has calculated that the amount of interest which has accrued on the principal amount owed by the Argie Defendants from October 24, 2018 thru October 2, 2023, to be $2,996.36, based on the Ohio statutory prejudgment rate (which was between 3% and 5% per annum during the time period at issue, based on the yearly interest rate determined on an annual basis by the Ohio Tax Commissioner, as specified by Ohio Rev. Code §

---

[99] 2006 U.S. Dist. LEXIS 106822 (E.D. Ky. March 20, 2006).
[100] 2011 U.S. Dist. LEXIS 25213 (E.D. Mich. March 11, 2011).
[101] *Id.* at *17.
[102] *Id.*

1343.03(A), the Ohio prejudgment interest statute).[103]

## IV.      CONCLUSION--TOTAL AMOUNT OF JUDGMENTS TO BE AWARDED AGAINST EACH OF THE DEFENDANTS HAS BEEN CALCULATED

Based on the foregoing, it is respectfully requested that the Court enter a Judgment against each of the Defendants which includes the principal amount of the judgment, accrued interest, proportionate attorneys' fees and costs for each Defendant (except the Argie Defendants), and proportionate Taxable Costs for the Argie Defendants.

The total judgment amounts requested against each Defendant are summarized as follows: Defendant P.K. Produce (Count I) $522,734.50, Debra (Count IV) $130,199.37, Paul (Count IV) $119,152.25, Magnum Express (Count IV) $37,643.10, Sipasak Properties (Count IV) $6,661.51, Strike Zone Lanes (Count IV) $1,847.43, Argie Defendants (Count IV) $29,523.84, and Debra (Count V) $522,734.50.[104]

//



//

---

[103] Anastassiou Decl., at Par. 19 and **Exhibit "M,"** and RJN, at **Exhibit "4"**.
[104] Anastassiou Decl., at Par. 21 and **Exhibit "O."** Alternatively, in the event that this Court does not award interest against the Argie Defendants at the contract rate of 18% per annum, but at the Ohio statutory prejudgment rate, then the Judgment amount against the Argie Defendants should be $19,510.72. *Id.*

Dated: October 2, 2023           Respectfully submitted,

/s/ *Effie F. Anastassiou*
Effie F. Anastassiou—Pro Hac Vice
ANASTASSIOU & ASSOCIATES
242 Capitol St., Post Office Box 2210
Salinas, California 93902
Telephone: (831) 754-2501
Facsimile: (831) 754-0621
Email: EffieEsq@SalinasAgLaw.com
Attorney for Plaintiff R&R Ag Consulting, Inc.
(formerly known as R & R Produce, Inc.)

## <u>CERTIFICATE OF SERVICE</u>

A copy of the foregoing Memorandum in Support of Application for Award of Attorneys' Fees and Costs was electronically filed and served to all counsel of record through the Court's ECF system this 2nd day of October, 2023.

In addition, a copy was mailed via U.S. priority mail to Paul Kasapis, who is currently not represented by counsel, to his last known address at 5300 South Cleveland Avenue, Canton, Ohio 44707, this 2nd day of October, 2023.


By: */s/ Effie F. Anastassiou*
      Effie F. Anastassiou




F:\RNR\PACA Claim against PK Produce\Trial\Atty Fees Motion\Memo of P&As Application for Award of Attorneys' Fees and Costs.docx